[No. 35332-2-I. Division One. July 29, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN PAUL SAVARIA, *Appellant*.

---

*Kitteridge Oldham*; and *Eric Broman* and *Nielsen & Acosta,* for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Foerschler, Deputy*, for respondent.

BAKER, C.J. — Steven Savaria appeals his convictions for felony harassment and intimidating a witness. The State concedes error regarding the conviction for felony harassment because the jury was not instructed to find all of the elements necessary to elevate harassment to a felony. We reverse both convictions because ·the trial

court's denial of Savaria's motion for a new trial based on newly discovered evidence was an abuse of discretion. We also discuss those other issues raised by Savaria which are likely to recur on retrial.

## FACTS

Savaria and the alleged victim (Karelson) had a stormy relationship. As a result of disputed events occurring in December 1993, Savaria was charged with assault and an order was issued prohibiting Savaria from having contact with Karelson. Trial was set for March 3, 1994. Despite the no contact order, Karelson contacted Savaria in late January. The two began seeing each other again. They discussed the upcoming trial and his desire to have the charge dropped. During a telephone conversation the night before trial, Karelson informed Savaria that she was going to appear in court the next day as a witness against him. According to Karelson, Savaria became very angry and said he would get revenge. He threatened to kill her with a gun. She became hysterical and, after calling Savaria back, allegedly called her father and told him about the threat. The next day Karelson and Savaria both appeared at the courthouse. Karelson was sitting in the prosecutor's office talking to a police officer when Savaria appeared at the office window, exhibited his middle finger, and allegedly glared at Karelson. Karelson then disclosed to the police the previous night's threat. Savaria was charged with felony harassment and intimidating a witness.

Savaria unsuccessfully moved in limine to exclude evidence of his prior acts of physical violence against Karelson. The court specified that the evidence was not to be used as character evidence to prove that Savaria is a bad person and acted in conformity with his prior acts, but as evidence tending to prove Karelson reasonably feared him when he threatened her. The reasonableness of her fear was an essential element of the charge of harassment.

After direct testimony by Karelson regarding the prior

incidents of violence, which characterized the relationship as a cycle of domestic violence, the State sought to admit the no contact order. The trial court erroneously ruled that the order was a necessary element of the charge of felony harassment, and admitted it.[1]

Defense counsel attempted to impeach Karelson by pointing out that she did not call anyone or tell anyone about the alleged threat before Savaria's gestures at the courthouse the next day. In response, Karelson asserted that she called her father after the previous night's threat. The father's testimony corroborated this assertion, with some inconsistencies (for example, the father stated that the police arrived while he was on the line, but Karelson testified that she did not talk to the police that evening). Defense counsel impeached the father's testimony with his earlier statement, during a pretrial interview, that Karelson did not call him that night.

At the close of testimony, the court denied defense counsel's motion for a mistrial based on the character evidence admitted. The court also denied defense counsel's motion to admit into evidence transcripts of messages Karelson left on Savaria's answering machine, which Karelson had used to refresh her recollection while testifying.

The jury found Savaria guilty as charged on both counts. Savaria unsuccessfully moved for a new trial based on newly discovered evidence of telephone records which would have impeached Karelson's, as well as her father's, testimony about the call to her father.

I

■ Savaria argues that the "to convict" instruction for the charge of harassment did not include elements necessary to convict him of either means of felony harassment, and the jury therefore found him guilty of only misde-

---

[1]We will not discuss Savaria's arguments regarding the admission into evidence of the no contact order, because it is not likely to be admitted on retrial.

meanor harassment. The prosecutor and the judge errone-
ously believed that harassment of a person named in a no
contact order, by itself, elevates harassment to a felony.
The statute provides that the perpetrator must also have
been previously convicted of a crime of harassment for the
no contact order to be relevant.[2] The State concedes error,
and joins Savaria's request that his judgment be reduced
to misdemeanor harassment and the cause be remanded
for resentencing. It is appropriate to reverse on this issue
despite defendant's failure to object at trial because remov-
ing an element of the crime from the jury is an error of
constitutional magnitude, which may be raised for the
first time on appeal.[3] We do not remand for resentencing
on the lesser crime, however, because we conclude that it
is necessary to reverse both convictions.

## II

█ Savaria argues that the trial court abused its discre-
tion by denying his motion for a new trial based on the
newly discovered telephone records.[4] Granting a new trial
because of newly discovered evidence is only appropriate
when the evidence

> (1) will probably change the result of the trial; (2) was
> discovered since the trial; (3) could not have been discovered
> before trial by the exercise of due diligence; (4) is material;
> *and* (5) is not merely cumulative or impeaching. The absence
> of any of the five factors is grounds for the denial of a new
> trial . . . .[5]

The telephone records would likely affect the verdict in
Savaria's trial. A new trial should nevertheless not be
granted if the new evidence would be used only to impeach

---

[2]RCW 9A.46.020.

[3]*See, e.g., State v. Smith*, 56 Wn. App. 909, 913, 786 P.2d 320 (1990).

[4]The juror affidavits submitted by Savaria assert matters which inhere in the
verdict, and we do not consider them.

[5]*State v. Jackman*, 113 Wn.2d 772, 779, 783 P.2d 580 (1989) (quoting *State v.
Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)).

trial testimony.[6] The telephone records would clearly be used to impeach Karelson's, and her father's, testimony. However, other jurisdictions have held that impeaching evidence can warrant a new trial if it devastates a witness's uncorroborated testimony establishing an element of the offense.[7] In such cases the new evidence is not merely impeaching, but critical.[8] We find this authority persuasive. The previous Washington cases which have touched on this issue have done so in the context of new evidence which was not likely to affect the verdict.[9] In this case the evidence of the threat, which formed the basis for at least the harassment charge, came solely from Karelson's testimony and was denied by the defendant. In addition, the claimed phone call was used by Karelson to establish her fear, which is also an element of harassment.[10] Her credibility was crucial.

We reject the State's argument that a new trial should not be granted because defense counsel could have discovered the telephone records before trial. Because the testimony about Karelson's phone call to her father was a surprise and the father kept it from defense counsel during pretrial discovery, counsel did not lack due diligence in failing to discover the telephone records before trial.

█ The trial court's denial of a new trial based on the newly discovered evidence was an abuse of discretion. This error warrants reversal of both convictions. We discuss

---

[6]*See, e.g., State v. Hutcheson*, 62 Wn. App. 282, 300, 813 P.2d 1283 (1991), *review denied*, 118 Wn.2d 1020 (1992); *State v. Sellers*, 39 Wn. App. 799, 807, 695 P.2d 1014, *review denied*, 103 Wn.2d 1036 (1985).

[7]*See, e.g., United States v. Davis*, 960 F.2d 820, 825 (9th Cir.), *cert. denied*, 113 S. Ct. 210 (1992); *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir.) (describing the judicial language that seems to exclude impeaching evidence as grounds for a new trial as an overgeneralization), *cert. denied*, 500 U.S. 927 (1991).

[8]*See, e.g., Alvarez v. United States*, 808 F. Supp. 1066, 1092 (S.D.N.Y. 1992).

[9]*See, e.g., Hutcheson*, 62 Wn. App. at 299-300; *Sellers*, 39 Wn. App. at 807.

[10]The evidence would also have effectively devastated her father's corroborating testimony.

the following issues only because they are likely to recur on retrial.

## III

Savaria next argues that Karelson did not believe that he would kill her, thus negating the necessary element of harassment that Karelson reasonably feared "that the threat will be carried out."[11] The State responds that Karelson need not believe the literal threat, but need only believe that she is threatened.

The State points to the broad purpose furthered by the criminal harassment statute, which is to protect persons from all forms of personal harassment.[12] Legislative intent cannot substitute for unambiguous statutory language,[13] but the language of this statute nevertheless supports the interpretation urged by the State. The statute could be read to require a reasonable fear that the precise threat made will be carried out. However, this interpretation would require a strained reading of the statute. The threat referred to in section (1)(b) of the statute is more logically one of the four general threats defined in section (1)(a) of the statute: the offender threatens to cause either physical injury, property damage, or physical restraint, or to do a malicious act to cause substantial harm. The legislative purpose of protecting persons from harassment supports this more logical definition of "the threat" referred to in section (1)(b) of the statute, and we adopt it. To hold otherwise would allow perpetrators to decriminalize their threats by couching them in bizarre and unrealistic terms.

Savaria's alleged threat falls under both the physical injury and malicious act categories. Karelson testified that

---

[11]RCW 9A.46.020(1)(b).

[12]See State v. Smith, 111 Wn.2d 1, 3, 759 P.2d 372 (1988).

[13]See, e.g, State v. Alvarez, 74 Wn. App. 250, 258, 872 P.2d 1123 (1994), aff'd, 128 Wn.2d 1, 904 P.2d 754 (1995).

she feared the defendant and became hysterical because of his threat. She was unsure whether he would actually kill her because of his instability, but was definitely afraid he would hurt her. Viewing this evidence in the light most favorable to the State, a reasonable trier of fact could have concluded that Karelson reasonably feared that Savaria would cause her bodily injury.

## IV

█ Savaria was charged with intimidating a witness by both of two alternative means: (1) attempting to influence the testimony of Karelson, and (2) attempting to induce Karelson to absent herself from his trial.[14] Savaria argues that there was insufficient evidence to support the "attempt to influence" means of intimidating a witness. If there is insufficient evidence as to any alternate means charged, the jury must be instructed that it must unanimously agree on the specific means used to commit the crime.[15] The State urges this court to hold that the jury is deemed to recognize a factual insufficiency as opposed to a legal insufficiency when considering alternate means to commit a crime. However compelling the State's reasoning may be, we are bound to follow the Supreme Court's clear directive that a unanimity instruction be used.[16]

The State alternatively asserts that the jury was necessarily unanimous about the "inducing absence means," because it must have found Savaria threatened to kill Karelson the night before trial in order to convict him of harassment. We disagree. There was no special finding in conjunction with the verdict that Savaria intended to induce Karelson's absence. In addition, the prosecutor argued to the jury that Savaria intended to influence

---

[14]RCW 9A.72.110(1)(a), (c). Although the information charged both means, the State need prove only one. See, e.g., State v. Dixon, 78 Wn.2d 796, 802-03, 479 P.2d 931 (1971); State v. Ford, 33 Wn. App. 788, 789-90, 658 P.2d 36 (1983).

[15]See State v. Ortega-Martinez, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994).

[16]See State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th (1984).

Karelson's testimony once she appeared at the courthouse by menacingly glaring at her and "flipping her off."

We agree with Savaria that the evidence presented at trial was not sufficient to prove an intent to influence Karelson's testimony at trial. "A jury may infer intent 'where a defendant's conduct plainly indicates the requisite intent as a matter of logical probability.' "[17] Savaria's actions at the courthouse certainly evidenced his unhappiness that Karelson was at the courthouse apparently willing to testify against him, but they did not provide a basis for the jury to conclude that Savaria was thereby attempting to influence the content of Karelson's testimony.[18]

We conclude that in the absence of a clear election by the State as to the alternative means charged, a unanimity instruction should have been given.

V

■ ■ Savaria also argues that the trial court erred by admitting testimony regarding Karelson's abusive relationship with the defendant, and the prosecutor committed misconduct by arguing Savaria's abusive character. The admission of evidence is within the trial court's discretion, and is reviewed only for abuse of that discretion.[19] Savaria does not dispute that evidence of prior acts of violence was relevant and necessary to prove an essential element of harassment—the victim's reasonable fear.[20] Even though such evidence is fraught with the danger of unfair prejudice, the trial court does not appear to have abused its discretion in denying the motion to exclude the evidence.

---

[17]*State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995) (quoting *State v. Stearns*, 61 Wn. App. 224, 228, 810 P.2d 41, *review denied*, 117 Wn.2d 1012 (1991)).

[18]*Compare State v. Jensen*, 57 Wn. App. 501, 510, 789 P.2d 772 (1990), *aff'd on other grounds sub nom. State v. Howe*, 116 Wn.2d 466, 805 P.2d 806 (1991).

[19]*E.g., State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995).

[20]*See also State v. Binkin*, 79 Wn. App. 284, 292-93, 902 P.2d 673 (1995), *review denied*, 128 Wn.2d 1015 (1996).

However, the testimony and argument went well beyond the parameters of allowable testimony needed to show Karelson's reasonable fear. The prosecutor asked Karelson whether the specific acts were typical of Savaria's behavior, and characterized the parties' relationship as a cycle of violence. The prejudice created by the extent and use of this evidence may not have been cured by the court's limiting instruction. On retrial, greater care should be given to properly circumscribing the evidence and its use.

## VI

Savaria also argues that the trial court erred by excluding the answering machine transcripts. Savaria and the State each argue a different interpretation of ER 612. Savaria correctly asserts that the rule gives an unqualified right to introduce writings used to refresh memory while testifying, and the court has discretion to admit writings used to refresh memory before testifying. Although the text of the rule is somewhat ambiguous, the legislative history of the federal rule, from which this state adopted its rule, makes it clear that only the introduction of writings used before testifying is left to the court's discretion. The original draft of the rule stated "[i]f a witness uses a writing to refresh his memory, either before or while testifying, an adverse party is entitled to have it produced." Following objections, the rule was rewritten to allow introduction of writings used before testifying only at the court's discretion in the interests of justice.[21] Writings used while testifying are per se admissible, so Savaria had a right to admission of the transcripts, assuming admission does not violate another rule of evidence. We note, however, that ER 612 provides for admission of evidence only to impeach the testimony to which the writing relates. If the evidence is to be used for an-

---

[21]See FED. R. EVID. 612; WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE, *Evidence* § 6181, at 434-36 (1993).

other purpose, it must be otherwise admissible for that purpose.[22]

The judgment and sentence are reversed, and the cause remanded for a new trial.

WEBSTER and BECKER, JJ., concur.

---

[22]*See* 5A K. TEGLAND, WASHINGTON PRACTICE, *Evidence* § 253, at 291 (1989); WRIGHT AND GOLD § 6183, at 455-56.