# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Personal Restraint of: | ) | NO. 67889-2-I |
| | ) | DIVISION ONE |
| CHARLES MADU MOMAH, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | FILED: January 21, 2014 |

2014 JAN 21 AM 8:45

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

LAU, J. — Charles Momah filed this personal restraint petition challenging his convictions in King County Superior Court No. 04-1-05925-5 KNT, seeking a new trial based on ineffective assistance of counsel, newly discovered evidence, Brady[1] violations, violation of his constitutional right to privacy, juror misconduct, improper courtroom closure, and cumulative error. In order to obtain collateral relief by means of a personal restraint petition, Momah must demonstrate either an error of constitutional magnitude that gives rise to actual prejudice or a nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Bare assertions and conclusory allegations do not warrant relief in a personal restraint proceeding. In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Because Momah fails to establish grounds for relief, the petition is denied.

---

[1] Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

A jury convicted Momah as charged of third degree rape of HP, indecent liberties with SS, indecent liberties with CB, and second degree rape of RB. HP claimed she asked Momah to see her at his office after hours on August 12, 2003, so he could prescribe emergency contraception and that he raped her on his examining table. HP testified that Momah threatened to have her son taken away if she told anyone, a result she feared because she was addicted to prescription drugs. Momah testified that they had consensual sex and that he also prescribed pain medications as HP requested.

SS, who received treatment from Momah between September 2002 and August 2003, testified that during one exam, Momah put his fingers into her vagina and then rubbed her clitoris with a circular pressure in a manner that made her feel uncomfortable and shocked. CB testified that Momah's behavior became increasingly inappropriate over the course of several appointments between 2001 and early 2003. CB claimed that Momah eventually used the ultrasound wand like a sex toy. Momah claimed he had had sex with CB at a time when she was not a patient but denied any impropriety during her exams.

RB testified that during an exam, Momah gave her an intravenous (IV) of fentanyl and then touched her breasts and clitoris inappropriately and used the ultrasound wand inappropriately in her vagina and her rectum. Momah denied any improper touching and testified that he did not have access to fentanyl and had not administered an IV for years.

Ineffective Assistance of Trial Counsel

In his petition, Momah first contends that trial counsel provided ineffective assistance by failing to properly interview and then call to testify at trial several witnesses to impeach the State's witnesses. To establish ineffective assistance, Momah must show

that counsel's performance was deficient and that prejudice resulted from the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 743 P.2d 816 (1987). Appellate courts presume that counsel was competent and followed a reasonable trial strategy. Strickland, 466 U.S. at 689-90. Prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. 2052; Thomas, 109 Wn.2d at 226. If one of the two prongs of the test is absent, we need not inquire further. Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Momah contends that Lynn Butler, a nurse anesthetist who provided anesthesia services when Momah performed surgeries, would have testified about Momah's lack of access to fentanyl, her own careful management and records of drugs stored in a locked drawer in his office, and her role in RB's surgery. Jennifer Sloan, who waited for RB during her appointment, would have testified as to the length of RB's exam and that RB did not say that anything unusual happened or appear to be under the influence of anesthetic drugs thereafter.

Momah also claims that his attorney should have called Cinnamon Krall, Stephanie Watson, Michelle Fjeld, and Carnarvus Kidd. These women were Momah's employees and/or patients during various time frames, who would have testified about one or more of the following topics: (1) Momah never said or did anything inappropriate; (2) Momah always wore gloves during exams; (3) Momah always insisted on having an employee in the exam room; (4) office inventory did not include IV equipment or fentanyl; (5) HP called frequently, asked about Momah's marital status

-3-

and possessions, came to the office without an appointment, and attempted to be alone with Momah in the exam room; (6) HP was irate and irrational after Momah told her she needed drug counseling; and (7) Harish Bharti, an attorney on a civil case against Momah, made outrageous false statements about Momah and encouraged former patients to join the lawsuit by focusing on potential monetary proceeds.

In addition, Momah claims that defense counsel should have investigated and offered the following evidence to impeach RB and HP: (1) documents including a letter to the Department of Health, insurance records, and her civil complaint, indicating RB had only one exam before her surgery, contrary to her claims at trial; (2) evidence demonstrating that a police search of Momah's office revealed no fentanyl or IV equipment; and (3) DNA tests of HP's vaginal swab excluding her boyfriend and evidence that HP had recently filled a prescription for oral contraception to contradict her claim at trial that she met Momah to obtain emergency contraception.

Even assuming that counsel could have presented the described testimony and evidence without risking damaging impeachment or the admission of other unhelpful evidence, Momah fails to establish either deficient performance or resulting prejudice. The record reveals that defense counsel aggressively cross-examined and impeached each of the State's witnesses and Momah does not contend otherwise. The fact that other potential impeachment material existed does not, by itself, render counsel's efforts constitutionally deficient. Although the proposed evidence could, at best, cast doubt on certain tangential details presented by State witnesses, Momah fails to establish that counsel failed to identify or produce any witness or evidence to directly contradict the essential details of the criminal conduct they described. None of the identified

witnesses could testify to being present at any of the four incidents giving rise to the charges. The defense theory of the case was that the State's witnesses manufactured unbelievable allegations against Momah in order to profit from a civil lawsuit against him. Counsel argued that Momah was not required to prove his innocence. In this context, reasonable counsel could have legitimately chosen to focus on the motives, biases, and lack of credibility of the State's witnesses rather than present general testimony and evidence regarding Momah's office policies or usual behavior. Momah's ineffective assistance claim fails.

Newly Discovered Evidence

Newly discovered evidence is grounds for relief in a personal restraint petition if those facts, "in the interest of justice," require vacation of the conviction or sentence. RAP 16.4(c)(3). To prevail here, Momah must show that the evidence: "'(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" In re Pers. Restraint of Lord, 123 Wn.2d 296, 319-20, 868 P.2d 835 (1994) (quoting State v. Williams, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)). The absence of any one of these five factors justifies the denial of a new trial. State v. Macon, 128 Wn.2d 784, 800, 911 P.2d 1004 (1996).

Momah contends that the following evidence is newly discovered and justifies a new trial: (1) Harish Bharti's "orchestration of witnesses and fabrication of testimony" in civil litigation against Momah and his brother, Dennis (First Amended Personal Restraint Petition at 30-31) (formatting omitted); (2) Momah's medical chart regarding RB; and

(3) RB's trial testimony in her civil suit against Momah. But Momah fails to demonstrate that any of these items require a new trial.

First, Momah has not produced any material evidence that Bharti influenced or fabricated the factual allegations made by HP, SS, CB, or RB at Momah's criminal trial. Momah's speculation and conjecture based on Bharti's alleged actions in civil litigation involving other patients of Momah or his brother does not justify relief here. At most, Bharti's misconduct in other cases could only constitute impeachment evidence. See, e.g., In re Pers. Restraint of Delmarter, 124 Wn. App. 154, 163-64, 101 P.3d 111 (2004) (misconduct of crime lab chemist during other tests in other cases could constitute only impeachment evidence).

Next, Momah claims that the medical chart contradicted RB's testimony and corroborated his testimony as to the dates, times, and number of his examinations of RB. But nothing in the chart would have contradicted RB's factual allegations as to the elements of the charged crime. At best, the chart could be used to impeach RB as to her recollection of specific dates and times of appointments, a subject of intense cross-examination at trial. Although the absence of the chart allowed the prosecutor to argue that Momah's detailed testimony about his treatment of RB was not credible, Momah fails to establish that its production at trial would have probably changed the result of the trial.

Similarly, Momah fails to establish that RB's testimony at the later civil trial constitutes material evidence that would probably change the outcome of his criminal trial. In particular, Momah contends that RB did not testify about an IV of fentanyl, "implicitly recanting" her testimony from the criminal trial. First Amended Personal Restraint Petition at 37. A reliable recantation may generally be considered newly discovered evidence

warranting a new trial. Macon, 128 Wn.2d at 799-800; State v. Savaria, 82 Wn. App. 832, 838, 919 P.2d 1263 (1996), overruled on other grounds by State v. C.G., 150 Wn.2d 604, 80 P.3d 594 (2003) (new evidence directly contradicting a key witness's uncorroborated testimony on an element of the offense may support granting a new trial). But RB's testimony at the civil trial was not a recantation. RB never testified that Momah did not rape her during an exam. Inconsistencies regarding specific details, such as the use of fentanyl, serve only to cast doubt on the credibility or accuracy of RB's testimony, which is merely impeachment. Momah fails to establish grounds for a new trial.

Suppression of Material Evidence

Momah next contends that the State violated the requirements of due process and Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to provide Sloan's telephone number to defense counsel prior to trial. To establish a Brady violation, Momah must demonstrate that the State suppressed evidence and that the defense could not have obtained the evidence using reasonable diligence. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); State v. Thomas, 150 Wn.2d 821, 851, 83 P.3d 970 (2004). There is only a Brady violation if the State failed to disclose the evidence before it was too late for Momah to make use of it. Boss v. Pierce, 263 F.3d 734, 740 (7th Cir. 2001).

During defense counsel's cross-examination of RB, the prosecutor stated that he had not spoken to Sloan but that he believed that his paralegal had Sloan's number and would provide it to defense counsel. Momah now contends, "It is not clear whether the prosecutor provided the number . . . ," and that "this claim may require discovery and an evidentiary hearing." Br. in Support of Personal Restraint Petition at 34. These conclusory

allegations are insufficient to justify a reference hearing. Rice, 118 Wn.2d at 886. Moreover, Momah fails to explain or demonstrate why the defense could not have obtained Sloan's telephone number using reasonable diligence. Momah fails to establish grounds for relief under Brady.

### Admission of Medical Files

Momah argues that the trial court erred by refusing to suppress the medical files seized from his office after determining that the police exceeded the scope of a valid search warrant for the records of HP and two other women not relevant here. Evidence obtained in violation of the privacy protections of the federal and state constitutions must be excluded. State v. Afana, 169 Wn.2d 169, 179-80, 233 P.3d 879 (2010). But, "[u]nder the independent source exception, evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action." State v. Gaines, 154 Wn.2d 711, 718, 116 P.3d 993 (2005).

Momah argues that the trial court improperly denied the motion to suppress based on the inevitable discovery doctrine, which is not a valid exception to the exclusionary rule in Washington. State v. Winterstein, 167 Wn.2d 620, 636, 220 P.3d 1226 (2009). But the trial court properly applied the independent source exception to admit the evidence. State v. Hilton, 164 Wn. App. 81, 89, 261 P.3d 683 (2011). Here, the trial court found that, each of the women, other than HP, involved in the trial, including the three remaining victims and the witnesses providing testimony admitted under ER 404(b), independently contacted the police after the initial seizure and signed releases granting the police access to their medical files. Verbatim Report of Proceedings (Oct. 6, 2005) at 38-39. Thereafter, the

police searched for the individual file of each woman who had provided a release. Hilton, 164 Wn. App. at 91-92 (relevant factual inquiry under independent source exception focuses on what police were doing and what motivated them to take the action they did to determine whether lawfully obtained evidence was tainted by earlier unlawful action). Because the warrant authorized the search for HP's records and the independent reports and releases from the other women authorized the police to obtain their records, the trial court properly applied the independent source exception and denied the motion to suppress. Momah fails to establish grounds for relief.

### Ineffective Assistance of Appellate Counsel

Momah claims appellate counsel provided ineffective assistance by failing to challenge the admission of the medical files. To prevail on an ineffective assistance of appellate counsel claim, Momah must demonstrate the merits of issues counsel failed to argue or argued inadequately. Lord, 123 Wn.2d at 314. Because he fails to demonstrate merit in such a challenge, this claim also fails.

### Juror Misconduct

Momah has presented declarations from two jurors to support his claim that a juror introduced extrinsic evidence into deliberations and was racially biased. In particular, a juror who revealed during voir dire that she had 32 years of experience as a nurse, stated her beliefs during deliberations that (1) RB accurately described the effects of fentanyl; (2) photos of instruments thrown into a drawer demonstrated conditions that are not professional or normal in a medical office; (3) receptionists do not normally act as chaperones in medical exams; (4) doctors must be extremely negligent to lose hospital privileges; and (5) Momah is intimidating because he is "big and black."

Generally, when evaluating a claim of juror misconduct, a court may not consider matters that inhere in the verdict, including the weight accorded to the evidence by individual jurors or the jurors' intentions or beliefs. State v. Jackman, 113 Wn.2d 772, 777–78, 783 P.2d 580 (1989). The mental processes, both individual and collective, by which jurors reach their conclusions are all factors inhering in the verdict. Jackman, 113 Wn.2d at 777–78. Nonetheless, criminal defendants are also constitutionally entitled to a fair trial before an unbiased and unprejudiced jury. State v. Jackson, 75 Wn. App. 537, 543, 879 P.2d 307 (1994) (where defendant makes prima facie showing of a juror's actual bias, the trial court violates due process by denying motion for new trial without conducting an evidentiary hearing).

A jury is expected to bring its opinions, insights, common sense, and everyday life experience into deliberations. State v. Briggs, 55 Wn. App. 44, 58, 776 P.2d 1347 (1989). Extrinsic evidence, by contrast, includes highly specialized information that is outside the realm of a typical juror's general life experience. Richards v. Overlake Hosp. Med. Ctr., 59 Wn. App. 266, 274, 796 P.2d 737 (1990). Where a prospective juror's specialized background is known to the parties who nonetheless allow the juror to serve, that juror's introduction of specialized information in evaluating the evidence during deliberation is not misconduct. Richards, 59 Wn. App. at 273-74 (juror who revealed medical background during voir dire did not inject extrinsic evidence into deliberations by offering her specialized analysis and opinion of evidence admitted at trial).

Here, the juror revealed her medical background during deliberations. The reported statements are based solely on the juror's opinions and life experience. Momah does not suggest that the juror consulted any outside resource during trial. Momah fails to

demonstrate misconduct. Similarly, Momah fails to demonstrate racial bias. The record reveals that the juror at issue recognized and disapproved of racism during voir dire. The witnesses testified to being intimidated by Momah's size, and the attorneys discussed his size and appearance during voir dire and argument. The juror's accurate description of Momah's physical appearance in this context does not constitute a prima facie showing of actual bias. Momah fails to establish grounds for relief.

### Courtroom Closure

Momah contends that the trial court violated his constitutional right to a public trial but acknowledges that the Supreme Court rejected his arguments in his direct appeal. State v. Momah, 167 Wn.2d 140, 217 P.3d 321 (2009). "A claim rejected on its merits on direct appeal will not be reconsidered in a subsequent personal restraint petition unless the petitioner shows that the ends of justice would be served thereby." In re Pers. Restraint of Jeffries, 114 Wn.2d 485, 487, 789 P.2d 731 (1990). Because Momah does not request reconsideration here, we do not address this claim.

### Cumulative Error

Momah claims that the cumulative error was so prejudicial as to deprive him a fair trial. Given his failure to demonstrate any error, we reject this claim.

Denied.

WE CONCUR:

-11-