IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38687-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MITCHELL EUGENE CRANE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Following a jury trial, Mitchell Crane was convicted of 29 counts of unlawful possession of a firearm, one count of possession of an unlawful firearm, and one count of intimidating a witness. He appeals arguing there was insufficient evidence to convict him of the 29 counts of unlawful possession of a firearm because the State added elements to the "to convict" instructions that it failed to prove. He also posits there was insufficient evidence to convict him of intimidation of a witness. Finally, Mr. Crane contends his offender was incorrectly calculated.

We affirm the convictions and remand for resentencing based on a corrected offender score.

BACKGROUND

Mr. Crane lived in rural Finley, Washington. He had previously been convicted of a "serious offense" in the state of Washington and was therefore prohibited from owning

firearms. Rep. of Proc. (RP)[1] at 180; RCW 9.41.040(1)(a). In 2020, the Department of

Fish and Wildlife (Department) began investigating Mr. Crane for poaching deer. In

February 2020, officers with the Department executed a search warrant at Mr. Crane's

residence. During the search, officers found 27 firearms in Mr. Crane's residence and

2 firearms in a shop on the property. One of the firearms found in Mr. Crane's shop was

a short-barrel shotgun.

After the search warrant was executed, Mr. Crane drove to Andrew Kienholz's,

and his father's, James Kienholz's,[2] residence. James and Andrew had earlier spoken to

the Department regarding Mr. Crane's alleged poaching, but Andrew had asked that his

name not be used in the search warrant affidavit. Mr. Crane told James that he wanted to

speak with Andrew in his car. Andrew met Mr. Crane in his car and testified that Mr.

Crane was "very, very aggressive." RP at 185. Andrew stated that Mr. Crane

> asked me if I was the one that reported him, and I told him that I was not.
> He told me that if we had any problems we could go out in the front yard
> and duke it out right now. Then he asked me again if I was the one that
> turned him in. I told him that I was not, and then he told me that when he
> found out who turned him in, that he was gonna kill them.

RP at 185.

---

[1] Unless otherwise noted, "RP" refers to the consecutively paginated verbatim
report of proceedings beginning August 3, 2020.

[2] Andrew and James Kienholz are referred to by their first names for clarity.

Mr. Crane was charged with 29 counts of unlawful possession of a firearm in the first degree, one count of possession of an unlawful firearm for possessing the short-barrel shotgun, and one count of intimidating a witness. A jury trial ensued. At trial, the court granted the State's motion to admit exhibits 1-54. Exhibits 4-6 and 23-49 were photos of each of the firearms Mr. Crane was alleged to have unlawfully possessed, along with a description consisting of the make, model, and serial number of each, positioned above each picture.

Following submission of the evidence, the court instructed the jury on each count of unlawful possession of a firearm similar to instruction 36:

> To convict the defendant of the crime of unlawful possession of a firearm in the first degree as charged in count 24, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about February 4, 2020, the defendant knowingly owned a firearm or knowingly had a firearm in his possession or control, to wit: *CVA Hunter Bolt .50 cal. black muzzleloader Serial #61-13-208623-02*;
>
> (2) That the defendant had previously been convicted of a serious offense; and
>
> (3) That the ownership or possession or control of the firearm occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 59 (emphasis added). With the exception of the make, model, and serial number of each firearm differing, the instructions for each count were the same.

The jury found Mr. Crane guilty of all counts.

Mr. Crane was sentenced for these offenses and two additional convictions for unlawful possession of a firearm from a different case at the same time. At sentencing, the parties agreed that all of Mr. Crane's convictions for unlawful possession of a firearm for the guns found in his home were the same criminal conduct and therefore counted as a single point in Mr. Crane's offender score. Likewise, the parties agreed the guns found in the shop were the same criminal conduct and counted as 1 point.

The parties disagreed about whether Mr. Crane's conviction for possession of an unlawful firearm and his conviction for unlawful possession of a firearm, both relating to his possession of the short-barrel shotgun, were the same criminal conduct. The State argued that the two offenses had different criminal intent and were therefore not the same criminal conduct.

The court accepted the parties' agreement that the convictions for unlawful possession of a firearm for the guns found in the home were the same criminal conduct and that the firearms found in the shop were the same criminal conduct. However, the court found the convictions for unlawful possession of a firearm and possession of an unlawful firearm were not the same criminal conduct and counted the convictions separately in Mr. Crane's offender score.

4

The State did not submit the judgment and sentences for Mr. Crane's two previous convictions from 2015, for second degree assault and felony harassment, but the court counted them as 2 additional points in Mr. Crane's offender score. The court sentenced Mr. Crane pursuant to an offender score of 7. Mr. Crane appealed.

After Mr. Crane's initial opening brief was filed with this court, we granted the State's motion to supplement the record pursuant to RAP 9.11. Comm'r's Ruling (Apr. 6, 2023). The superior court was ordered to take additional evidence regarding Mr. Crane's 2015 convictions and whether they constituted the same criminal conduct. Comm'r's Ruling at 8 (Apr. 6, 2023).

The State submitted Mr. Crane's 2015 statement on plea of guilty and judgment and sentence for his assault and harassment convictions. The State conceded that "it would be a mistake to say that [Mr. Crane's 2015 convictions are] not . . . the same criminal conduct." RP (July 18, 2023) at 18. However, the State contended Mr. Crane's argument that the two convictions constituted the same criminal conduct was untimely as his convictions for those crimes were over a year old.

The court agreed that Mr. Crane's 2015 convictions were the same criminal conduct that would lower his offender score from 7 to 6. However, the court elected to "defer to the Court of Appeals" on whether Mr. Crane should be allowed to raise the same criminal conduct issue at this stage. CP at 163. Thus, the court declined to alter Mr. Crane's offender score.

5

ANALYSIS

On appeal, Mr. Crane argues there was insufficient evidence to convict him of the 29 counts of unlawful possession of a firearm because the State added elements to the "to convict" instructions that it failed to prove. He also posits there was insufficient evidence to convict him of intimidation of a witness. Finally, Mr. Crane contends his offender score was incorrectly calculated.

SUFFICIENCY OF EVIDENCE – UNLAWFUL POSSESSION OF A FIREARM

Mr. Crane argues there was insufficient evidence to prove that he knowingly possessed the particular firearms identified by their make, model, and serial number in the to convict instructions. We disagree.

The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

6

The due process clause of the Fourteenth Amendment to the United States Constitution requires the State prove every element of an alleged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). If, at trial, the State fails to present sufficient evidence to support the elements of the crime, double jeopardy prohibits a retrial. *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). The double jeopardy clause of the Fifth Amendment to the United States Constitution does not afford the State a second opportunity to supply evidence in a second trial that it failed to muster in the first. *Id.*

"A to-convict instruction must contain all of the essential elements of the crime because it serves as a 'yardstick' for the jury to measure innocence or guilt." *State v. Nielsen*, 14 Wn. App. 2d 446, 450, 471 P.3d 257 (2020). The State "must prove the elements included in the to-convict instructions, even when those elements [are] 'otherwise unnecessary.'" *State v. Dillon*, 12 Wn. App. 2d 133, 142, 456 P.3d 1199 (2020) (quoting *State v. Johnson*, 188 Wn.2d 742, 760, 399 P.3d 507 (2017)).

RCW 9.41.040(1)(a) reads:

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.

The make, model, and serial number of the particular firearm is not an element of the crime of unlawful possession of a firearm. However, here, the "to convict"

7

instructions read, in relevant part: "(1) That on or about February 4, 2020, the defendant knowingly owned a firearm or knowingly had a firearm in his possession or control, to wit: CVA Hunter Bolt .50 cal. black muzzleloader Serial #61-13-208623-02." CP at 59. The to convict instructions for each count were the same, save for the make, model, and serial number of each distinct firearm.

In support of his argument, Mr. Crane directs us to *State v. Jussila*, 197 Wn. App. 908, 932, 392 P.3d 1108 (2017). In *Jussila*, we reversed Mr. Jussila's convictions for unlawful possession of a firearm. *Id*. There, the to convict instructions included each firearm's make, model, and serial number. At trial, the State presented little, if any, evidence of the make, model, and serial numbers of the firearms Mr. Jussila was charged with possessing. In *Jussila*, we held the law-of-the-case doctrine applies to jury instructions that add an element to a crime. *Id*. at 920.

Conversely, in *State v. Munoz-Rivera*, we held that the victim's birthdate did not become an added element of the crime when the to convict instruction read, in part, "(1) That on or about November 3, 2013, the defendant assaulted *K.T. DOB: (11/27/03)* with a deadly weapon." 190 Wn. App. 870, 878, 361 P.3d 182 (2015) (emphasis added). The court in *Munoz-Rivera* reasoned:

> By placing K.T.'s date of birth in parentheticals, the State did not add her date of birth as an additional and otherwise unnecessary element. Rather, the parenthetical date of birth information was given to identify K.T. and thus distinguish her from any other person whose name might have been mentioned during the trial. To hold otherwise would place form over

8

substance and manufacture an ambiguity on appeal that certainly never entered the jurors' minds.

*Id.* at 883.

The *Jussila* court distinguished Mr. Jussila's "to convict" instructions from those in *Munoz-Rivera* stating, "We consider the use of parenthesis in *State v. Munoz-Rivera* dispositive." *Jussila*, 197 Wn. App. at 924. The court reasoned that "[e]mployment of parenthesis informed the jury that the information in parenthesis is different, if not insignificant, from other language explaining the elements of the crimes." *Id.* The court pointed to the dictionary definition of parenthesis to support its reasoning: "The *English Oxford Dictionary* [sic] defines 'parenthesis' as '[a] word or phrase inserted as an explanation or afterthought into a passage which is grammatically complete without it, in writing usually marked off by brackets, dashes, or commas.'" *Id.* (second alteration in original) (quoting OXFORD DICTIONARY ONLINE, https://en.oxforddictionaries.com /definition/parenthesis (last visited Feb. 15, 2017).

Here, because the State added the make, model, and serial number of each firearm to the to convict instructions, to secure a conviction, proof of such was necessary. However, we disagree with Mr. Crane's argument that the State had to prove he *knew* the specific make, model, and serial number of each firearm.

In jury instruction 36, the to convict instruction, the noun "firearm" was set apart by the adverb "to-wit." CP at 59. "To wit" means "that is to say : NAMELY . . . often

used to call attention to particular matters embraced in more general preceding language." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2418 (1993). Further, contrary to Mr. Crane's argument, the term "knowingly" only modified the portion of the instruction that stated Mr. Crane "had a firearm in his possession or control." CP at 59.

To secure a conviction, the jury instructions required the State to prove Mr. Crane knowingly owned a firearm or knowingly had a firearm in his possession or control and, by way of the adverb "to wit," that the firearm he knowingly owned or possessed was the same make and model and bore the same serial number as the firearm introduced into evidence. In other words, the State had to prove only that Mr. Crane knowingly possessed each firearm, not that he knew the specific make, model, and serial number of each.

The State provided evidence that Mr. Crane knowingly possessed each firearm by identifying the firearms by their make, model, and serial number via exhibits 4-6 and 23-49. Each exhibit corresponded to a jury instruction that also included the make, model, and serial number of each firearm. In viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Mr. Crane's guilt beyond a reasonable doubt.

We affirm Mr. Crane's convictions for 29 counts of unlawful possession of a firearm as the State presented evidence sufficient to show that Mr. Crane knowingly

possessed each firearm identified in the information and prescribed in the jury instructions.

SUFFICIENCY OF THE EVIDENCE – INTIMIDATION OF A WITNESS

Mr. Crane contends his general threat was insufficient to prove he attempted to influence Andrew's testimony. We disagree.

RCW 9A.72.110 reads, in relevant part:

(1) A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:

     (a) Influence the testimony of that person;

     (b) Induce that person to elude legal process summoning him or her to testify;

     (c) Induce that person to absent himself or herself from such proceedings; or

     (d) Induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child, not to have the crime or the abuse or neglect of a minor child prosecuted, or not to give truthful or complete information relevant to a criminal investigation or the abuse or neglect of a minor child.

Mr. Crane's to convict instruction for intimidating a witness stated:

To convict the defendant of the crime of intimidating a witness, each of the following elements of the crime must be proved beyond a reasonable doubt:

     (1) That on or about February 4th, 2020, the defendant by use of a threat against a current or prospective witness attempted to influence the testimony of that person; and

     (2) That this act occurred in the State of Washington.

CP at 36.

11

Mr. Crane argues his threat to Andrew, that he "was gonna kill" whoever turned him into the authorities, was not made in an attempt to influence Andrew's testimony in an "official proceeding" because Mr. Crane referenced no such proceeding. Am. Br. of Appellant at 36. Mr. Crane points to RCW 9A.72.010(6) that defines "testimony" as including "oral or written statements, documents, or any other material that may be offered by a witness in an *official proceeding*." (Emphasis added.) However, Mr. Crane does not offer any authority to support his proposition that an attempt to influence a prospective witness's testimony must directly reference an official proceeding.

Mr. Crane cites *State v. Brown*, 162 Wn.2d 422, 173 P.3d 245 (2007), and *State v. Savaria*, 82 Wn. App. 832, 919 P.2d 1263 (1996), to support his claim that the evidence was insufficient. In *Brown*, our Supreme Court held the evidence was insufficient to support a conviction for witness intimidation because the State's evidence established only that Mr. Brown attempted to prevent the witness from providing information to the police, not that he attempted to influence her testimony. *Brown*, 162 Wn.2d at 430.

In *Savaria*, we held that there was insufficient evidence to support the "attempt to influence" means of intimidating a witness. 82 Wn. App. at 841. Mr. Savaria, during a telephone call with the witness the day before trial, threatened to kill her after being informed she would appear in court as a witness against him. The next day, Mr. Savaria and the witness appeared at the courthouse and Mr. Savaria glared at her and showed his

12

middle finger to the witness upon seeing her in the prosecutor's office talking to a police officer.

Mr. Savaria was subsequently charged with two alternative means of witness intimidation: attempting to influence the testimony of the witness and attempting to induce the witness to absent herself from his trial. The prosecutor argued that Mr. Savaria attempted to influence the witness's testimony by glaring at her and "'flipping her off'" at the courthouse. *Id.* at 841. Mr. Savaria argued on appeal that there was insufficient evidence to support the "attempt to influence" means of intimidating a witness. *Id.* The court held that Mr. Savaria's actions at the courthouse evidenced his unhappiness that the witness was going to testify against him, but were not enough to prove he intended to influence her testimony.

On the other hand, the State cites *State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973). There, Mr. Scherck's witnesses testified that he asked the victim to "'just, you know, drop the charges. That's all we ever asked him to do.'" *Id.* Mr. Scherck contended on appeal that this was not enough to demonstrate an attempt to prevent the witness from "'appearing'" at his trial. *Id.* Contrary to Mr. Scherck's evidence, the victim testified that Mr. Scherck said, "'If you will refuse to appear as a witness in a trial against [Scherck's friend], the State will have no course but to drop the case.'" *Id.* (alteration in original). And that "[w]hen the victim responded that he could not refuse to appear, Scherck observed that he (the victim) had a nice house in a nice neighborhood

and that '[i]t would be a shame if anything happened to it.'" *Id.* (second alteration in original). The witness testified that Mr. Scherck also stated "that if the case came to trial it 'would be very embarrassing for [the victim].'" *Id.* (alteration in original). Based on this evidence, this court held there was substantial evidence supporting the court's conclusion that a factual question remained for the jury.

Here, Mr. Crane's threat and "aggressive" demeanor toward Andrew demonstrated his anger about being reported to the Department. RP at 185. Further, his statement that "when he found out who turned him in, that he was gonna kill them," was intended to dissuade Andrew from testifying against him at trial because doing so would surely reveal that he was the informant. *Id.* "A jury may infer intent 'where a defendant's conduct plainly indicates the requisite intent as a matter of logical probability.'" *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995) (quoting *State v. Stearns*, 61 Wn. App. 224, 228, 810 P.2d 41 (1991). After viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Mr. Crane's threat to Andrew was meant to prevent him from revealing himself as the informant by testifying against him at trial. Thus, there was sufficient evidence to convict Mr. Crane of intimidation of a witness.

SAME CRIMINAL CONDUCT (POSSESSION OF AN UNLAWFUL FIREARM AND
UNLAWFUL POSSESSION OF A FIREARM)

Mr. Crane argues his convictions for unlawful possession of a firearm and possession of an unlawful firearm encompassed the same criminal conduct and should have been counted as 1 point. We disagree.

Determinations of same criminal conduct are reviewed for abuse of discretion or misapplication of the law. *State v. Aldana Graciano*, 176 Wn.2d 531, 536-37, 295 P.3d 219 (2013). Because a finding of "same criminal conduct" favors Mr. Crane, he has the burden to prove the possession of the unlawful firearm and the unlawful possession of a firearm were the same criminal conduct. *Id.* at 539.

A determination of "same criminal conduct" at sentencing alters the offender score that is calculated by adding up the number of points for each prior offense. RCW 9.94A.525(5)(a)(i). For purposes of an offender score calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a).

For sentencing purposes, if a court finds that "some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." *Id*. For multiple crimes to be treated as the "same criminal conduct," the crimes must have (1) been committed at the same time and place, (2) involved the same victim, and (3) involved the same objective criminal intent. *Id*.

15

Here, the trial court found that Mr. Crane's convictions for unlawful possession of a firearm and possession of an unlawful firearm were not the same criminal conduct. Consequently, the trial court added 2 points to Mr. Crane's offender score, 1 point for each of the two convictions.

In *State v. Hatt*, Division One of this court held that Mr. Hatt's convictions for unlawful possession of a firearm and possession of an unlawful firearm had the same objective intent—"to possess the firearm." 11 Wn. App. 2d 113, 143, 452 P.3d 577 (2019). Thus, the two offenses encompassed the same criminal conduct. *Id.* In doing so, the court analyzed *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1988), which "directed courts to 'focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next'" for purposes of analyzing the third factor of the same criminal conduct analysis. *Hatt*, 11 Wn. App. 2d at 142. The *Hatt* court recognized that the Supreme Court in *Dunaway* "did not interpret objective criminal intent to be equivalent to statutory intent, stating that 'counts with identical mental elements, if committed for different purposes, would not be considered the same criminal conduct.'" *Id.* at 143 (internal quotation marks omitted) (quoting *Dunaway*, 109 Wn.2d at 215).

However, the court in *Hatt* viewed *State v. Chenoweth*, 185 Wn.2d 218, 370 P.3d 6 (2016), as departing from *Dunaway*'s analysis. 11 Wn. App. 2d at 143. The *Hatt* court recognized that in *Chenoweth* "the court compared the statutory criminal intent

16

requirements of [rape of a child and incest] to determine that '[t]he intent to have sex with someone related to you differs from the intent to have sex with a child.'" *Id.* (second alteration in original) (quoting *Chenoweth*, 185 Wn.2d at 223). The court in *Hatt* nevertheless believed the *Dunaway* framework was applicable. *Id.*

More recently, in *State v. Westwood*, the Supreme Court explained that *Chenoweth* and *Dunaway* are "not inconsistent and neither overrules the other." 2 Wn.3d 157, 166, 534 P.3d 1162 (2023). The court reiterated that "[t]he statutory intent is relevant in determining whether the objective intent prong is satisfied. Looking to any other source of intent has the potential to lean too closely to the subjective analysis that we have always rejected." *Id.* at 167. The court further clarified that "when same criminal intent is satisfied, in cases where we determined the crimes did encompass the same criminal conduct, there was a connection in the statutory definitions, with the statutory intent element of the crimes being either identical or very similar." *Id.*

Here, to convict Mr. Crane of possession of an unlawful firearm, the State had to prove Mr. Crane "knowingly possessed a short-barreled shotgun" and that Mr. Crane "had knowledge of the characteristics that make the gun unlawful." CP at 34; RCW 9.41.190(1). On the other hand, to prove Mr. Crane unlawfully possessed the short-barrel shotgun, the State only had to prove Mr. Crane "knowingly owned a firearm or knowingly had a firearm in his possession" having been previously "convicted of a serious offense." CP at 38; RCW 9.91.040(1)(a).

17

We agree with the holding in *Hatt* that the overarching intent of both crimes is "to possess the firearm." 11 Wn. App. 2d at 143. However, that does not conclude our analysis. "If the objective intent for the offenses were the same or similar, courts can then look at whether the crimes furthered each other and were part of the same scheme or plan." *Westwood*, 2 Wn.3d at 168.

The objective intent of the crime of unlawful possession of a firearm is simply to possess a firearm. Possession of an unlawful firearm has a different criminal intent—to possess a firearm more dangerous and easier to conceal than a legal firearm. Consequently, the two crimes do not have the same objective criminal intent and are not the same criminal conduct.

The trial court did not abuse its discretion or misapply the law in finding that the unlawful possession of a firearm and possession of an unlawful firearm were not the same criminal conduct.

SAME CRIMINAL CONDUCT (2015 ASSAULT AND HARASSMENT)

Mr. Crane argues, and the State concedes, that his 2015 convictions for assault and harassment constituted the same criminal conduct. We accept the agreement and remand for resentencing with a corrected offender score.

Below, the State recognized that "it would be a mistake to say that [Mr. Crane's 2015 convictions are] not . . . the same criminal conduct." RP (July 18, 2023) at 18.

18

However, the State contended Mr. Crane's argument that the two convictions constituted the same criminal conduct was untimely as his convictions were over a year old.

The trial court made "a finding that I'm held to the standard of the statement on a plea of guilty on Case Number 15-1-00192-06" and attributed 1 point for each conviction toward Mr. Crane's offender score rather than counting both as a single point. *Id*. at 33. The trial court, in its findings, recognized that the crimes had the same victim, occurred at the same time and place, and had the same objective criminal intent. The court concluded the crimes involved the same criminal conduct. However, the trial court declined to count them as 1 point and instead elected to "defer to the Court of Appeals the issue of whether the defendant should be allowed to raise a collateral attack on cause number 15-1-00192-6 at this point." CP at 70. The two offenses should have been counted as 1 point.

RCW 9.94A.525 reads:

> (5)(a) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
>
> (i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. *The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or prior juvenile offenses for which sentences were served consecutively, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used.* The current sentencing court may presume that such other prior offenses were not the same criminal conduct

19

from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations.

(Emphasis added.) Thus, the current sentencing court must make its own determination of whether prior offenses constitute the same criminal conduct. *State v. Johnson*, 180 Wn. App. 92, 101, 320 P.3d 197 (2014). The fact that Mr. Crane's prior 2015 convictions were over a year old has no bearing on the analysis.

The court correctly concluded that Mr. Crane's two 2015 convictions were the same criminal conduct and it should have therefore counted them as 1 point. Remand for resentencing is necessary.

## CONCLUSION

We affirm Mr. Crane's convictions and remand for the trial court to resentence Mr. Crane with a corrected offender score.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, C.J.                    Fearing, J.

20