IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32684-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS WAYNE JUSSILA, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Dennis Jussila appeals his convictions for burglary and theft on the ground of insufficiency of evidence. His appeal requires us to address the continued validity of *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998) and the law of the case doctrine in the context of jury instructions that add elements to a crime beyond the elements contained in a statute. We conclude that, if *State v. Hickman* is to be overruled, the Washington Supreme Court, not the Court of Appeals, should readdress the decision's validity. We reverse Dennis Wayne Jussila's theft and possession of firearm convictions because the jury instructions listed the serial numbers of the firearms and the State provided no proof of the numbers. We reverse a conviction of theft in the second degree

because of insufficient evidence of the value of stolen property. We affirm other convictions.

## FACTS

This prosecution for burglary, theft of firearms, and unlawful possession of firearms arises from the burglary of Joseph Craven's Goldendale home. Appellant Dennis Wayne Jussila is the twenty-one-year-old son of the neighbor of Craven.

Between 11:00 a.m. and 3:00 p.m., on March 21, 2014, someone entered Joseph Craven's residence, while Craven drove to and from Rufus, Oregon. Craven forgot to lock his home's door. The thief purloined various items, including a safe, gold watch, knife sharpener, seven guns, a laptop computer, and a bag of coins.

## PROCEDURE

In an amended information, the State of Washington charged Dennis Jussila with seven counts of theft of a firearm, seven counts of unlawful possession of a firearm, burglary in the first degree, theft in the second degree, and manufacturing marijuana. All charges, except the marijuana manufacturing charge, stem from the March 21, 2014, entry of Joseph Craven's abode. The amended information based the second degree theft charge on Jussila's alleged taking of a laptop computer and a bag of coins exceeding $750 in value.

At trial, the State presented limited evidence regarding the stolen firearms. The

2

State introduced as exhibits five photographs of the weapons. Those photos do not picture the make, model, or serial number of any of the weapons. Joseph Craven testified that those pictures depicted his rifles. Craven also testified to his missing personal property:

> Q . . . But I want to ask you about—you came home—
> A Uh-huh.
> Q — that time, say, two, three o'clock that afternoon—
> A Yes. That's correct.
> Q Noticed some items missing.
> A Right.
> Q Were rifles missing?
> A There were seven rifles in cases in the bedroom, the back bedroom. And I—Yeah. I noticed those missing right away.
> Q Okay.
> A Also the .45 that was in the desk drawer.
> Q Okay.
> And I want to show you—I want to show you what's been marked State's Exhibit No. 11.
> A Yes. That's a Browning—
> Q I don't want you to identify it—
> . . . .
> A —that is my shotgun, that's correct.
> Also above is a 30/30 rifle that was in the case with some ammunition.
> Q You do recognize what's in that—
> A I do, yes, sir—
> Q All right. And does that photo accurately depict how your—the item in that exhibit looked on March the 21st.
> A Correct.
> Q All right.
> I want to show you Exhibit—State's Exhibit No. 7. And again, without identifying it, just tell me, do you recognize what's in State's Exhibit No. 7.
> A Yes, I do.

3

Q Okay. And does that accurately depict how that item looked on March 21st this year.

A That's correct.

Q State's Exhibit No. 8. Recognize it?

A Yes, I do.

Q Okay. And again, does that accurately depict how State's Exhibit 8 looked—on March the 21st.

A That's correct.

Q All right. State's Exhibit 9, same question. Do you recognize it and does it accurately depict how that item looked on March the 21st.

A That's correct.

Q And finally, State's Exhibit No. 10.

A Yes, that's correct.

Q All right.

Now, I don't know if you were present or not when these photographs were taken but were you present when these photographs were taken?

A No, sir. These items—Not when the photos were taken. These items were later found next door and returned to me. And then—the—we had serial numbers on all of those rifles, and the police took them as evidence and then later returned—.

. . . .

Q Looking through those, those exhibits that I just presented to you, those are your rifles?

A That's correct.

Q Okay. And on March 21st are those the items, those rifles, that were missing from your home when you got home on March 21st?

A That's correct.

Q All right. Did you ever give anybody permission to have those weapons in their possession.

A No, sir.

. . . .

Q . . . Now, those—those exhibits there are not the totality of the weapons or firearms that were missing from your house on the 21st, are they?

A That's correct.

Q What else was missing on the 21st?

A I had a .45 automatic pistol that was loaded and in the desk. Also

4

a .357 magnum that was under some clothes in the chest of drawers.

Report of Proceedings at 75-79.

During trial, Joseph Craven testified to a missing gold watch and knife sharpener.

He did not know the value of the watch. He averred the value of the sharpener to be $50.

Finally, Craven testified to a missing satchel of coins worth $250 to $300.

At the close of evidence, the trial court, in jury instructions 24 through 30, listed

the elements the State needed to prove for counts III through IX, the seven counts of

firearm theft. One of the elements for each of the crimes included language identifying

the stolen gun's make, model and serial number. Jury instruction 24 read:

> To convict the defendant of the crime of theft of a firearm as charged
> in Count III, each of the following elements of the crime must be proved
> beyond a reasonable doubt:
> (1) That on or about March 21, 2014, the defendant wrongfully
> obtained a firearm, a .357 caliber revolver, serial number 8002032,
> belonging to another;
> (2) That the defendant intended to deprive the other person of the
> firearm; and
> (3) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been
> proved beyond a reasonable doubt, then it will be your duty to return a
> verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a
> reasonable doubt as to any one of these elements, then it will be your duty
> to return a verdict of not guilty.

Clerk's Papers (CP) at 49. Jury instructions 25 to 30 respectively changed the second

paragraph, or the paragraph identified with 1 in parenthesis, of jury instruction 24 to the

5

No. 32684-5-III
*State v. Jussila*

following:

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Ruger .223 caliber rifle, serial number 195-37396, belonging to another.

CP at 50.

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Marlin 30-30 lever action rifle, serial number 11015584, belonging to another.

CP at 51.

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Browning 12-guage shotgun, serial number 4509S, belonging to another.

CP at 52.

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Ruger 10/22 semi-automatic .22 caliber carbine rifle, serial number 232-2943, belonging to another.

CP at 53.

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Colt semi-automatic handgun, serial number DR09167, belonging to another.

CP at 54.

> That on or about March 21, 2014, the defendant wrongfully obtained a firearm, a Ruger lever-action .17 caliber rifle, serial number 620-55751, belonging to another.

CP at 55.

6

The trial court, in jury instructions 32 through 38, similarly listed the elements the

State needed to prove for counts X through XVI, the seven counts of unlawful possession

of a firearm in the first degree. Again, one of the elements of the crime listed the gun's

make, model and serial number. Jury instruction 32 read:

> To convict the defendant of the crime of unlawful possession of a
> firearm in the first degree as charged in Count X, each of the following
> elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about March 21, 2014, the defendant knowingly had a
> firearm, a .357 caliber revolver, serial number 8002032, in his possession
> or control;
> (2) That the defendant had previously been convicted of a serious
> offense; and
> (3) That the possession of the firearm occurred in the State of
> Washington.
> If you find from the evidence that each of these elements has been
> proved beyond a reasonable doubt, then it will be your duty to return a
> verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a
> reasonable doubt as to any one of these elements, then it will be your duty
> to return a verdict of not guilty.

CP at 57. Jury instructions 33 to 38 respectively changed the second paragraph, or the

paragraph with 1 in parenthesis, of jury instruction 32 to the following:

> That on or about March 21, 2014, the defendant knowingly had a
> firearm, a Ruger .223 caliber rifle, serial number 195-37396, in his
> possession or control.

CP at 58.

> That on or about March 21, 2014, the defendant knowingly had a
> firearm, a Marlin 30-30 lever action rifle, serial number 11015584, in his
> possession or control.

7

CP at 59.

> That on or about March 21, 2014, the defendant knowingly had a firearm, a Browning 12-guage shotgun, serial number 4509S, in his possession or control.

CP at 60.

> That on or about March 21, 2014, the defendant knowingly had a firearm, a Ruger 10/22 semi-automatic .22 caliber carbine rifle, in his possession or control.

CP at 61.

> That on or about March 21, 2014, the defendant knowingly had a firearm, a Colt semi-automatic handgun, serial number DR09167, in his possession or control.

CP at 62.

> That on or about March 21, 2014, the defendant knowingly had a firearm, a Ruger lever-action .17 caliber rifle, serial number 620-55751, in his possession or control.

CP at 63.

The jury returned a verdict finding Dennis Jussila guilty of burglary in the first degree, theft in the second degree, five counts of theft of a firearm, five counts of unlawful possession of a firearm in the first degree, and manufacture of marijuana. The jury found Jussila not guilty of two counts of unlawful possession of a firearm. The jury hung on two counts of theft of a firearm.

The statutory minimum sentence for these convictions, with Dennis Jussila's offender score, was 620 months. The trial court, nonetheless, ruled that an extraordinary sentence downward was appropriate because all thefts of a firearm and all unlawful possessions of a firearm were the same course of conduct. The trial court imposed 164 months in prison. The trial court based the 164-month sentence on the following calculation: 75 months total for all five theft of a firearm convictions to run consecutive to 89 months total for all five unlawful possession of a firearm convictions, with 116 months on the burglary in the first degree, 29 months on the theft second, and 24 months on the marijuana manufacturing convictions all running concurrent to the firearm charges.

The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, reimbursement of $1,500 in court appointed attorney fees, and $1,420 in restitution. The trial court did not inquire into Dennis Jussila's present or future ability to pay any legal financial obligations.

## LAW AND ANALYSIS

### Insufficiency of Evidence

### Theft and Unlawful Possession of Firearms

Dennis Wayne Jussila contends that, by including the make, model, and serial number of the firearms in the "to convict" instructions for the theft and unlawful

possession charges, the State added those facts as elements of the crimes and failed to prove them at trial. The State responds that the jury instructions did not add a description of the guns as an essential element. Instead, according to the State, it included information in the jury instructions that described the firearms so as to distinguish one firearm from all others and one criminal count from all others.

The State also argues that, under a recent United States Supreme Court decision, *Musacchio v. United States*, 577 U.S.___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016) and a recent decision of Division One of this court, *State v. Tyler*, 195 Wn. App. 385, 382 P.3d 699 (2016), the law of the case doctrine no longer applies to jury instructions that add an element to a crime. We agree with Dennis Jussila and reverse all theft of a firearm and unlawful possession of a firearm convictions. In so agreeing, we depart from our companion division's ruling in *State v. Tyler*.

Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977).

The make, model, and serial numbers of a gun are not elements of theft of a firearm, under RCW 9A.56.300, or unlawful possession of a firearm, under RCW

9.41.040. The trial court need not have placed these identifying features of Joseph Craven's guns in any of the jury instructions. Inserting the description of the firearms in the instructions made sense, however. The State charged Dennis Jussila with seven counts of theft of a firearm and seven counts of unlawful possession of a firearm and failing to distinguish one gun from another gun in the respective jury instructions could have become confusing to the jury. We must decide whether the inclusion of the identifying information of a gun imposed an obligation on the State to prove the accuracy of the information beyond a reasonable doubt.

Under the law of the case doctrine, jury instructions not objected to become the law of the case. *State v. Hickman*, 135 Wn.2d at 102 (1998). A defendant may assign error to the sufficiency of the evidence of an element added to the crime in the instruction. *State v. Hickman*, 135 Wn.2d at 102. When the sufficiency of the evidence is challenged, the reviewing court must consider the sufficiency in light of the instructions. *State v. Munoz-Rivera*, 190 Wn. App. 870, 882, 361 P.3d 182 (2015). If the reviewing court finds insufficient evidence to prove the added element, reversal is required. *State v. Hickman*, 135 Wn.2d at 103.

*State v. Hickman*, 135 Wn.2d 97 (1998) remains Washington's principal decision on the question of elements added, beyond statutory elements of a crime, in jury instructions. The State added the county in which the crime occurred as an element to the

11

"to convict" instruction. The instruction read:

> To convict the defendant of the crime of Insurance Fraud, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That the defendant, James Hickman, on or about the 1st day of July, 1992, to the 31st of August, 1992, did knowingly present or cause to be presented a false or fraudulent claim or any proof in support of such a claim, for the payment of a loss under a contract of insurance; and
> (2) That the false or fraudulent claim was made in the excess of One Thousand Five Hundred Dollars ($1,500); and
> (3) *That the act occurred in Snohomish County, Washington.*

*State v. Hickman*, 135 Wn.2d at 101 (emphasis added) (boldface omitted). The State

presented no evidence regarding the locus of the crime.

In *State v. Hickman*, the Washington Supreme Court held that, by adding the

county of the crime in the jury instruction, the State bore the burden of proving the

offense's location beyond a reasonable doubt. The court reasoned that the law of the case

doctrine applied. The court wrote:

> [W]e note the law of the case doctrine benefits the system by encouraging trial counsel to review all jury instructions to ensure their propriety before the instructions are given to the jury. Moreover the doctrine is well established by multiple precedent and is encapsulated in criminal rule CrR 6.15(c), which requires all objections to jury instructions be made before the instructions are given to the jury.

*Hickman*, 135 Wn.2d at 105. The court reversed Hickman's conviction due to the lack of

evidence of the crime's county.

In this appeal, the State seeks to distinguish *State v. Hickman* and argues that

12

*Hickman* has been overruled. We address each contention in such order.

The State attempts to distinguish this appeal from *State v. Hickman* by arguing that the make, model, and serial number of Joseph Craven's firearms were descriptions and not elements of the charged crimes. The State observes that the descriptions were not separated into their own numbered elements or paragraphs within the respective jury instructions, but rather inserted directly after the word "firearm" to conveniently distinguish for the jury which firearm was referenced for each instruction. The State emphasizes that the location of the crime was its own separate element in the *Hickman* jury instruction.

A decision with an outcome opposite of *State v. Hickman* is this court's recent decision in *State v. Munoz-Rivera*, 190 Wn. App. 870 (2015). Adrian Munoz-Rivera lived with Maria Tamayo and nine-year-old K.T. The State charged Munoz-Rivera with, among other crimes, assault in the second degree against K.T. and felony harassment against K.T. At trial, K.T. testified and stated her full name and age. She also declared that she recently had a birthday. Nevertheless, the State presented no evidence of her date of birth. The "to convict" jury instruction for second degree assault read, in part:

> To convict the defendant of the crime of Assault in the Second Degree, as charged in Count I, each of the following two elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about November 3, 2013, the defendant assaulted *K.T. (DOB: 11/27/03)* with a deadly weapon;
> (2) That this act occurred in the State of Washington.

13

*State v. Munoz-Rivera*, 190 Wn. App. at 878-79 (2015) (emphasis added). The jury

instruction for felony harassment also identified K.T. as the victim and placed her date of

birth in parenthesis after her initials. A jury found Munoz-Rivera guilty of both crimes.

On appeal, Adrian Munoz-Rivera argued that, under the law of the case doctrine,

the State needed to prove K.T.'s date of birth beyond a reasonable doubt. The State

contended that use of the date of birth correlated with its attempt to protect K.T.'s privacy

by using her initials. We rejected Munoz-Rivera's argument. This court reasoned:

> By placing K.T.'s date of birth in parentheticals, the State did not
> add her date of birth as an additional and otherwise unnecessary element.
> Rather, the parenthetical date of birth information was given to identify
> K.T. and thus distinguish her from any other person whose name might
> have been mentioned during the trial. To hold otherwise would place form
> over substance and manufacture an ambiguity on appeal that certainly never
> entered the jurors' minds.

*Munoz-Rivera*, 190 Wn. App. at 883. The State provided some evidence tending to

support the birthdate such as the child's age and a recent birthday.

We must decide whether to follow *State v. Hickman* or *State v. Munoz-Rivera*.

The resolution of this question includes a determination of whether we consider the

identifying information regarding Joseph Craven's firearms as form rather than

substance, or as merely an incidental description and not an element.

We consider use of parenthesis in *State v. Munoz-Rivera* dispositive. This court

emphasized that the jury instruction placed the date of birth in parenthesis. Employment

14

of parenthesis informed the jury that the information in parenthesis is different, if not insignificant, from other language explaining the elements of the crimes. The English Oxford Dictionary defines "parenthesis" as "[a] word or phrase inserted as an explanation or afterthought into a passage which is grammatically complete without it, in writing usually marked off by brackets, dashes, or commas." OXFORD DICTIONARY ONLINE. https://en.oxforddictionaries.com/definition/parenthesis (last visited Feb. 15, 2017). Thus, the jury instruction was complete without the afterthought of the date of birth.

No brackets or parentheses surrounded the make, model and serial number of the guns mentioned in Dennis Jussila's jury instructions. Nothing in the language of the jury instructions informed the jury that it was to treat the identifying features of the firearms any different from other factual propositions that the jury instructions instructed them the State must prove beyond a reasonable doubt. A literal reading of the jury instructions required proof beyond a reasonable doubt of the make, model and serial number of each gun. The instructions mentioned the make, model and serial number as being an element of the crimes.

In the case on appeal, the State presented scant evidence to distinguish one gun from another. The pictures of the firearms are confusing because of redundancy and lack of identifying characteristics for the guns. One cannot tell how many of the seven firearms are pictured in the six photographs. The State presented little testimony

15

identifying the stolen guns. The State's counsel often asked the victim to refrain from identifying the guns.

We find no case that addresses whether the State must prove beyond a reasonable doubt the make, model or serial number of firearms if jury instructions contain such data. We find cases from other jurisdictions, wherein to convict jury instructions also listed such information with regard to stolen property as an element of the crime. *See United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1123-24 (9th Cir. 2015); *State v. Caldwell*, 140 Idaho 740, 101 P.3d 233, 234 (2004).

The State also argues that, because the jury instructions did not place the make, model, and serial numbers in separate paragraphs or under separate numbered elements, the identifying information did not become an element of the crimes. We disagree. No Washington court has adopted an element-by-numbering theory for determining the law of the case. If we agreed, the State could prevent the law of the case doctrine from ever applying by failing to number paragraphs in a to convict jury instruction.

We have determined that *State v. Hickman* holds relevance to Dennis Jussila's appeal. We must now decide whether *State v. Hickman* remains good law.

The State cites to *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709 (2016) and *State v. Tyler*, 195 Wn. App at 385 (2016) for the proposition that the law of the case doctrine no longer applies to elements added to the law in a jury instruction. In

*Musacchio*, the United States Supreme Court held that when a jury instruction lists all the elements of the charged crime but incorrectly adds one element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction. The Court rejected the application of the law of the case doctrine in circumstances when the reviewing court reviews whether the jury heard evidence sufficient to convict the defendant of a crime. The Court's holding conflicts with the Washington Supreme Court's enduring jurisprudence as articulated in *State v. Hickman*.

Unclear is whether the United States Supreme Court based its *Musacchio* decision on a reading of the United States Constitution's due process clause, on an application of federal rules of appellate review, or both. Assuming the Supreme Court grounded its decision on the due process clause, the United States Supreme Court sets a floor for constitutional requirements, not a ceiling. Washington can provide more protection under its constitution.

Our dissenting brother identifies the question on appeal as what does due process require? After *Musacchio v. United States*, the United States Constitution's Fifth Amendment and Fourteenth Amendment no longer require appellate review of all of the language in a jury instruction, when the appellant questions sufficiency of evidence to convict him or her. But contrary to the dissent's assumption, *Musacchio* does not

17

preclude states from interpreting their respective due process clauses from requiring

consideration of all language in the jury instruction when assessing the sufficiency of

evidence. A state may interpret broader a state's analog constitutional provision.

*PruneYard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S. Ct. 2035, 64 L. Ed. 2d

741 (1980); *see Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570

(1975); *State v. Gunwall*, 106 Wn.2d 54, 59, 720 P.2d 808 (1986).

More importantly, *Musacchio* does not preclude a state from applying the law of

the case doctrine to jury instructions regardless of any constitutional considerations. The

dissent's analysis ends at a false finishing line and fails to recognize the existence of law

beyond the United States' Constitution's due process clauses. *State v. Hickman* did not

ground its decision on the United States' due process clause. Despite being the highest

court in the land, the United States Supreme Court has no authority in limiting a state's

law of the case doctrine. *Michigan v. Long*, 463 U.S. 1032, 1040-41, 103 S. Ct. 3469, 77

L. Ed. 2d 1201 (1983); *State v. Chrisman*, 100 Wn.2d 814, 816, 676 P.2d 419 (1984).

The State next relies on Division One of this court's recent case, *State v. Tyler*,

195 Wn. App. 385 (2016), wherein this court determined that the law of the case doctrine

derives from the due process clause of the Fourteenth Amendment. In so deciding, the

court determined that *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L.

Ed. 2d 639 (2016) abrogated the law of the case doctrine and a century of precedent

18

No. 32684-5-III
*State v. Jussila*

established by the Washington Supreme Court. Our sister division wrote:

> In light of *Musacchio*, then, Washington courts have previously misinterpreted the scope of the Fourteenth Amendment's due process protections pertaining to evidentiary sufficiency review. Our courts have erroneously reviewed the State's proof for evidentiary sufficiency measured against additional elements or means set out in a to-convict instruction when those additional elements or means were not provided for in the charged crime.
>    *Musacchio* makes it clear that a reviewing court is to disregard "additional elements" . . . set out in a to-convict instruction and, instead, must evaluate the sufficiency of the evidence based on the essential elements of the charged crime as enacted by the legislature.
>    . . . .
>    . . . The guarantee of the Fourteenth Amendment applies only to actual crimes, duly enacted. It does not apply to crimes created by mistake in an erroneous jury instruction.

*State v. Tyler*, 195 Wn. App. at 399-400 (footnote omitted).

The *Tyler* court considered the standard of proof guaranteed by the Fourteenth Amendment's due process clause to provide the sole basis on which Washington courts review criminal convictions for evidentiary sufficiency. We agree with this observation, but the observation has limited application to the law of the case doctrine. The observation is accurate as to the due process clause requiring that elements of a crime must be established beyond a reasonable doubt and that, on review, sufficient evidence must show proof beyond a reasonable doubt. Nevertheless, the observation does not directly address whether the State must prove beyond a reasonable doubt elements of a crime as outlined in a jury instruction as opposed to encapsulated in a statute.

19

We believe that the *Tyler* court misunderstood the basis for the law of the case doctrine. Under the Washington Constitution and Washington criminal rules, a jury applies only the law provided by the court. We hope that the law provided by the court coincides with the law in Washington statutes and decisions, but sometimes the instructions contain error. Under court rules and decisional law, parties must register exceptions or objections to mistaken jury instructions before the end of trial. These court rules, not the Fourteenth Amendment, form the basis for Washington's law of the case doctrine.

CrR 6.15(c), a current criminal rule, includes the following language regarding objecting to jury instructions:

> Before instructing the jury, the court shall supply counsel with copies of the proposed numbered instructions, verdict and special funding forms. The court shall afford to counsel an opportunity in the absence of the jury to object to the giving of any instructions and the refusal to give a requested instruction or submission of a verdict or special finding form. The party objecting shall state the reasons for the objection, specifying the number, paragraph, and particular part of the instruction to be given or refused. The court shall provide counsel for each party with a copy of the instructions in their final form.

The rule implies that a party is bound by the language of the jury instruction unless it registers a timely objection.

As early as 1896, the Washington Supreme Court recognized the law of the case doctrine as applied to jury instructions. In *Pepperall v. City Park Transit Co.*, 15 Wash.

20

176, 181, 45 P. 743 (1896), *overruled on other grounds by Thornton v. Dow*, 60 Wash.

622, 111 P. 899 (1910), *abrogated by Davis v. Baugh Indus. Contractors, Inc.*, 159

Wn.2d 413, 150 P.3d 545 (2007), the court ruled that a verdict of a jury, in disobedience

to an instruction of the court that was incorrect in a point of law, is a verdict "against

law." *Pepperall* cited to the Washington Constitution to support the law of the case

doctrine. The pertinent section of the Washington Constitution reads: "Judges shall not

charge juries with respect to matters of fact, nor comment thereon, *but shall declare the

law.*" WASH. CONST. art. IV § 16 (emphasis added).

In 1910, the Washington Supreme Court purported to overrule itself holding "in

conformity with the general principles announced by this court that, where we find that

the verdict of the jury is sustained by the law, the verdict cures the erroneous instruction."

*Thornton v. Dow*, 60 Wash. at 629. Nevertheless, a month later, the Supreme Court said

"[t]hese instructions were not excepted to and have become the law of the case, so that

we are not called upon to determine whether any other or higher duty devolved upon the

respondent." *Sexsmith v. Brown*, 61 Wash. 164, 166, 112 P. 337 (1910). By 1917,

according to the Supreme Court, the law of the case doctrine was "so well established

that the assembling of the cases is unnecessary." *Peters v. Union Gap Irrigation District*,

98 Wash. 412, 413, 167 P. 1085 (1917).

In 1959 the Washington Supreme Court explained:

21

In January 1927, the court, under the rule-making power, abrogated the statute which permitted exceptions to instructions up to the time of argument on a motion for a new trial, and required all exceptions to instructions to be taken before the cause was submitted to the jury. The purpose was to enable the court to correct any mistake in the instructions in time to prevent the unnecessary expense of a second trial. It is now familiar law that, unless timely exceptions are taken, the instructions become the law of the case. The prime objective of all procedural law is the just, speedy, economical and final determination of litigation.

*Agranoff v. Morton*, 54 Wn.2d 341, 345, 340 P.2d 811 (1959) (footnotes omitted). By the 1960s the law of the case doctrine was well accepted throughout the state. *See, e.g., State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968); *State v. Reid*, 74 Wn.2d 250, 252, 444 P.2d 155 (1968); *State v. Queen*, 73 Wn.2d 706, 707, 440 P.2d 461 (1968); *State v. Leohner*, 69 Wn.2d 131, 134, 417 P.2d 368 (1966); *State v. Holbrook*, 66 Wn.2d 278, 281, 401 P.2d 971 (1965); *State v. Sayward*, 63 Wn.2d 485, 494, 387 P.2d 746 (1963). The Washington Supreme Court continued to apply the law of the case doctrine in numerous cases over the ensuing decades. *State v. France*, 180 Wn.2d 809, 814, 329 P.3d 864 (2014); *State v. Salas*, 127 Wn.2d 173, 182, 897 P.2d 1246 (1995); *State v. Ng*, 110 Wn.2d 32, 39, 750 P.2d 632 (1988).

In 2005, the Washington Supreme Court discussed the history and application of the law of the case doctrine by observing:

Law of the case is a doctrine that derives from both RAP 2.5(c)(2) and common law. This multifaceted doctrine means different things in different circumstances and is often confused with other closely related doctrines, including collateral estoppel, res judicata, and stare decisis.

22

> In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation. In addition, law of the case also refers to the principle that jury instructions that are not objected to are treated as the properly applicable law for purposes of appeal. In all of its various formulations the doctrine seeks to promote finality and efficiency in the judicial process.

*Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005) (citations and

footnotes omitted).

This abridged jaunt through history teaches that the law of the case doctrine does

not derive from a constitutional due process analysis, but from common law and our

court rules. In *State v. Hickman*, 135 Wn.2d 97 (1998), the Supreme Court never

suggested that imposing the burden of proving elements added in a jury instruction was a

constitutional rule or a rule based on due process. Because the doctrine derives solely

from Washington law and it does not fail constitutional muster, the United States

Supreme Court's holding in *Musacchio* does not abrogate our application of the law of

the case doctrine in Washington criminal appeals.

We particularly refuse to abandon *State v. Hickman* and its application of the law

of the case doctrine to jury instructions because such abandonment is the prerogative of

the state Supreme Court, not the Court of Appeals. This appellate court remains bound

by a decision of the Washington Supreme Court. *State v. Hairston*, 133 Wn.2d 534, 539,

946 P.2d 397 (1997); *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). We

23

must follow Supreme Court precedence, regardless of any personal disagreement with its premise or correctness. *1000 Virginia Ltd. Partnership v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006); *State v. Gore*, 101 Wn.2d at 487. When the Court of Appeals fails to follow directly controlling authority by this court, it errs. *1000 Virginia Ltd. Partnership v. Vertecs Corp.*, 158 Wn.2d at 578 (2006); *State v. Gore*, 101 Wn.2d at 487.

The dissent may suggest that Dennis Jussila may not raise the sufficiency of evidence on appeal because he failed to challenge the sufficiency of evidence before the trial court. The law says otherwise. Under RAP 2.5(a)(2), an appellant may raise for the first time on appeal a failure to establish facts on which relief may be granted. Based on this rule, a criminal defendant may challenge the sufficiency of evidence used to convict him for the first time on appeal. *State v. Colquitt*, 133 Wn. App. 789, 795-96, 137 P.3d 892 (2006). The State does not contend that Dennis Jussila waived his right to argue the insufficiency of evidence on appeal.

If the reviewing court finds insufficient evidence to prove an added element, reversal is required. Retrial following reversal for insufficient evidence is unequivocally prohibited and dismissal is the remedy. *State v. Hickman*, 135 Wn.2d at 103. Because the State presented no evidence of the serial numbers and extremely limited evidence of make and model of the firearms, insufficient evidence supported Dennis Jussila's firearm convictions. Therefore, we reverse the five counts of theft of a firearm and five counts of

24

unlawful possession of a firearm in the first degree on which the jury convicted Jussila.

## Insufficiency of Evidence

## Burglary in the First Degree

Dennis Jussila also contends that the State presented insufficient evidence the guns were "firearms" under the definition of RCW 9.41.010(9). He emphasizes that the limited testimony provided no detailed descriptions from which a factfinder could conclude beyond a reasonable doubt that guns depicted in the exhibits were real guns. Since we have already vacated Jussila's convictions for theft of and unlawful possession of a firearm, this argument only relates to Jussila's conviction for burglary in the first degree. The State responds that the evidence was sufficient to prove that the pictured guns were real and operational, and, therefore, this court should not impinge on the jury's verdict. We agree with the State.

To repeat, evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d at 221-22 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. at 826 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d at 906-07 (1977).

Under RCW 9A.52.020(1), burglary in the first degree comprises:

> A person is guilty of burglary in the first degree if, with intent to
> commit a crime against a person or property therein, he or she enters or

25

> remains unlawfully in a building and if, in entering or while in the building
> or in immediate flight therefrom, the actor or another participant in the
> crime (a) is armed with a deadly weapon, or (b) assaults any person.

Deadly weapon includes firearms. RCW 9A.04.110(6). Under RCW 9.41.010(9), a

firearm is a

> weapon or device from which a projectile or projectiles may be fired
> by an explosive such as gunpowder.

A gun-like object incapable of being fired is not a "firearm." *State v. Pam*, 98 Wn.2d

748, 754, 659 P.2d 454 (1983), *overruled in part on other grounds by State v. Brown*, 111

Wn.2d 124, 761 P.2d 588 (1988), *adhered to on recons.*, 113 Wn.2d 520, 782 P.2d 1013

(1989). For example, a nondeadly toy gun is not a firearm per the definition. *State v.*

*Pam*, 98 Wn.2d at 753; *State v. Tongate*, 93 Wn.2d 751, 755, 613 P.2d 121 (1980).

Nevertheless, an unloaded firearm that can be loaded or a malfunctioning firearm that can

be fixed are both firearms under the statutes. *State v. Faust*, 93 Wn. App. 373, 381, 967

P.2d 1284 (1998).

The jury found Dennis Jussila guilty of burglary in the first degree under the

deadly weapon prong. For this conviction to stand, the State must have proven that one

of the guns stolen from Joseph Craven's home met the statutory definition of "firearm."

We conclude the evidence is sufficient. A law enforcement officer testified that, in

Jussila's father's garage, he found soft rifle cases with rifles inside. Craven testified that

26

he recognized the guns and the guns had previously been inside his home. The State

presented evidence that some of the guns were loaded with ammunition. During the

testimony, witnesses repeatedly referred to the various missing items as guns, shotguns,

firearms, weapons, and rifles. No one explicitly declared that a gun was real or operable,

both those facts can be inferred from the testimony and pictures presented. No witness

hinted that any firearm was a toy.

## Insufficiency of Evidence

## Theft in the Second Degree

Dennis Jussila challenges his conviction for theft in the second degree on the

ground that the State presented insufficient evidence of the value of the property stolen.

We agree.

RCW 9A.56.040 creates the crime of theft in the second degree. The statute reads,

in relevant part:

> (1) A person is guilty of theft in the second degree if he or she
> commits theft of:
> (a) Property or services which exceed(s) seven hundred fifty dollars
> in value but does not exceed five thousand dollars in value, other than a
> firearm as defined in RCW 9.41.010 or a motor vehicle.

A guilty verdict of second degree theft requires finding both a taking and the value of the

goods exceeding $750. *State v. Kleist*, 126 Wn.2d 432, 433, 895 P.2d 398 (1995).

"Value" means "the market value of the property or services at the time and in the

27

approximate area of the criminal act." RCW 9A.56.010(21). Market value is the price a well-informed buyer would pay to a well-informed seller, when neither is obliged to enter the transaction. *State v. Kleist*, 126 Wn.2d at 435. A property owner may testify as to the property's market value without being qualified as an expert. *State v. McPhee*, 156 Wn. App. 44, 65, 230 P.3d 284 (2010). Admissible evidence of price paid is entitled to great weight but must not be too remote in time. *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). Direct evidence is not necessary to prove value, and a jury may draw reasonable inferences from the evidence, including changes in the condition of the property that affect its value. *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012).

We must first determine what evidence to consider when determining whether the State proved beyond a reasonable doubt that stolen property, other than firearms, exceeded $750. Dennis Jussila argues that evidence of stolen items not listed in the charging information cannot be used to calculate value. The information listed a laptop computer and a bag of coins, but not a safe, car keys, knife sharpener, or gold watch. The State responds that a specific list of property is not an essential element of theft in the second degree, and, therefore, an exhaustive list was not necessary in the information. We decline to resolve this dispute because either way we agree with Dennis Jussila that the State did not prove value of stolen property exceeding $750.

28

Joseph Craven was the only witness who presented testimony as to the value of the stolen goods. Craven testified that the burglar took a laptop computer, but Craven uttered no opinion as to the computer's value. Craven testified that the culprit took a safe, in which lay car keys, a $50 knife sharpener, and $250 to $300 in coins. Craven testified he lost a valuable gold watch, but he placed no value on the watch. In sum, the jury only heard evidence of goods taken in an amount approximating $350. We recognize that the other stolen personal property had value, but we would speculate if we placed a value on the other goods. Therefore, we hold the evidence insufficient to support Jussila's theft in the second degree conviction and reverse.

## Legal Financial Obligations

Dennis Jussila finally argues that the trial court erred in imposing discretionary legal financial obligations without inquiring into his present and future ability to pay. The State concedes that the inquiry was not done and the case should be remanded for the superior court to conduct an inquiry as to Jussila's ability to pay. Because we are already remanding for resentencing, we also remand for an individual determination of whether Dennis Jussila can pay legal financial obligations.

## CONCLUSIONS

We vacate Dennis Jussila's five convictions for theft of a firearm, five convictions for unlawful possession of a firearm in the first degree, and one conviction for theft in the

29

second degree. We remand for resentencing on the remaining convictions and direct the

trial court to conduct a hearing on whether Jussila has the present or future ability to pay

discretionary legal financial obligations.

Dennis Jussila moves this court to deny the State an award of appeals costs. Since

we rule in favor of Jussila on the merits, the motion is moot.

_____
Fearing, C.J.

I CONCUR:

_____
Pennell, J.

30

32684-5-III

KORSMO, J. (dissenting in part) — While I agree with much of the outcome of the majority's opinion, I part company with the discussion concerning the continued validity of *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998), in light of *Musacchio v. United States*, 577 U.S. __, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016). The question is not whether this court is overruling *Hickman*, something we have no power to do. Rather, the question is whether we follow *Musacchio*, something we are required to do. The majority sets up a false argument instead of addressing the actual question. Rather than asking whether the law of the case doctrine still has play in a sufficiency of the evidence review, the true question to be asked is: what does *due process* require? Division One correctly answered this question in *State v. Tyler*, 195 Wn. App. 385, 382 P.3d 699 (2016).[1] I agree with that analysis and would affirm on this issue.

The basic principles at play in this case are quite clear. The United States Supreme Court is the final arbiter of the meaning of the Constitution of the United States. *Arizona v. Evans*, 514 U.S. 1, 8-9, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). The inferior

---

[1] The Washington Supreme Court recently accepted review of this issue in an earlier Division One case, *State v. Johnson*, No. 93453-3 (Dec. 8, 2016). Since *Johnson* is unpublished and presents a less developed discussion of the issue than does *Tyler*, I will refer to *Tyler* rather than *Johnson* in my discussion.

federal courts, as well as state courts, may issue their own interpretation of that document in the absence of controlling precedent. *Id.* However, "a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." *Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975).

Whether or not sufficient evidence has been produced to support a criminal conviction presents a question of law under the due process clause of the Fourteenth Amendment to the Constitution of the United States. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Specifically, *Jackson* stated the test for evidentiary sufficiency under the federal constitution to be "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Washington altered its test for evidentiary sufficiency to comply with *Jackson* in *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality); *Id.* at 235 (concurrence of Utter, C.J.).[2] Washington continues to analyze this issue under the *Green* and *Jackson* standard. *E.g.*, *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

---

[2] The history of the two decisions in *Green* and the change in evidentiary review standards between those decisions is discussed in *Tyler* and need not be repeated here. *See* 195 Wn. App. at 393-94.

2

Against this uncontested backdrop of federal constitutional law comes Washington's law of the case doctrine. The majority nicely traces some of the history of that doctrine back to the earliest days of Washington statehood, culminating in the case at issue, *Hickman*. I do not disagree with the basic analysis of that case. *Hickman* applied the law of the case doctrine and dismissed a conviction due to lack of evidence to prove an extraneous venue element imported into the decision by an overly inclusive jury instruction. 135 Wn.2d at 99.

The United States Supreme Court subsequently faced the same scenario in *Musacchio*. There, as in *Hickman*, an extraneous element was added for the jury's consideration due to an instruction. 193 L. Ed. 2d at 646. Defendant agreed that the evidence did support a jury finding on the charged offense. *Id.* at 647. Unlike *Hickman*, the United States Supreme Court concluded that the surplusage did not matter. The due process requirements in this context apply to require only proof of the elements of the charged offense and did not extend to the additional element:

> We hold that, when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction.

*Id.* This result was dictated by the nature of due process review for evidentiary sufficiency. The purpose of that review is to reach those cases where the evidence was so lacking that it should never have been submitted to the jury. *Id.* To that end, "a

3

reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'" *Id.* at 647-48 (quoting *Jackson*, 443 U.S. at 314-15). Accordingly, the "failure to introduce evidence of an additional element does not implicate the principles that sufficiency review protects." *Id.* at 648.

*Musacchio*, thus, read the law of the case doctrine out of due process evidentiary review. The law of the case is a common law doctrine rather than a constitutional doctrine. That distinction is absolutely critical. It explains both why *Hickman* no longer applies to this situation and why we cannot review the *Hickman* claim for the first time on appeal. *Hickman* no longer applies because its (largely unarticulated) constitutional underpinning has been supplanted by *Musacchio*. As *Hass* demonstrates, Washington now has no ability to articulate a different federal due process standard than that set forth by the United States Supreme Court. Because *Hickman* no longer has any constitutional basis, there is no ability to consider a *Hickman*-type argument for the first time on appeal in the absence of a timely objection. RAP 2.5(a). Understandably, counsel for Mr. Jussila had no reason to object to the extra identification elements in the weapons charges.

As the majority notes, Washington's due process protection found in art. I, § 3 could perhaps provide greater protection in this context. However, for several reasons, it

4

does not. First, Mr. Jussila does not argue that the state constitution provides greater protection in this context. No attempt has been made to comply with the state constitutional analysis required in *State v. Gunwall*, 106 Wn.2d 54, 61-63, 720 P.2d 808 (1986). In the absence of a *Gunwall* analysis, Washington courts cannot interpret the state constitution due to insufficient argument. *E.g.*, *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 663, 771 P.2d 711, 780 P.2d 260 (1989); *State v. Wethered*, 110 Wn.2d 466, 472, 755 P.2d 797 (1988). Second, as the history in *Green* shows, Washington has always applied federal due process standards to evidentiary sufficiency. Moreover, Division One of this court once undertook a *Gunwall* analysis of the state due process clause and concluded there was no basis for giving that provision a broader reading. *See State v. Turner*, 145 Wn. App. 899, 906-09, 187 P.3d 835 (2008). Third, once *Hickman* is stripped of its due process ties, there is no basis for relief. *Tyler* nicely shows that Washington's common law treatment of evidentiary sufficiency challenges resulted only in a new trial, not dismissal of charges, in those instances where the evidence was insufficient. 195 Wn. App. at 403-04. This history strongly suggests there is no basis for applying broader state protections in this context. Even if Mr. Jussila had argued the point, he could not have prevailed.

The unarticulated premise of the majority opinion appears to be that since state law defines crimes and Washington uses the law of the case doctrine to define offenses (by occasionally adding additional elements in jury instructions), this situation presents a

No. 32684-5-III
*State v. Jussila*

question of federal constitutional law. It does not. That approach expressly runs afoul of both *Hass* and *Musacchio*. The question here is what this court has the power to review, not whether the same offense is defined differently in different cases. Due process permits review only of the charged offense and does not include review of the extraneous elements given to the jury.

Mr. Jussila did not challenge the jury instruction at trial and thus cannot do so here because due process sufficiency review does not extend to the additional elements. The only argument he can make is the due process claim permitted by *Musacchio*, but he does not make that claim. The only argument he does make is a *Hickman* claim, but that argument is not preserved for our review since it does not implicate a constitutional right. RAP 2.5(a)(3). Since the majority ignores our obligation under the supremacy clause to follow *Mussachio* instead of the superseded analysis of *Hickman*, I respectfully dissent from that portion of the majority's analysis.

Korsmo, J.

6