# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57061-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHELLE M. OSBORN, | |
| Appellant. | |

CHE, J. — Michelle M. Osborn appeals her convictions for second degree burglary, second degree malicious mischief, and second degree theft. She argues that she was denied her constitutional right to confront witnesses when the trial court permitted a witness who tested positive for COVID-19 to testify remotely. She also argues that the State produced insufficient evidence to support her conviction for second degree theft and that she received ineffective assistance of counsel. We disagree that the trial court committed constitutional error by allowing the witness to testify remotely. The State concedes that insufficient evidence supported the second degree theft conviction, and we accept its concession. As a result, we need not reach Osborn's ineffective assistance of counsel argument.

We affirm Osborn's convictions for second degree burglary and second degree malicious mischief but remand to the trial court to vacate her conviction for second degree theft and for resentencing. Upon resentencing the trial court must also strike the victim penalty assessment.

No. 57061-1-II

FACTS

In 2021, Michelle Osborn entered the laundry facility at the port of Port Angeles, sprayed a substance on the security camera to cover its view, broke apart the counter, and stole the coin machine. The State charged Osborn with second degree burglary, second degree malicious mischief, and second degree theft.

At trial, the State requested that one of its witnesses, Mike Simonson, the port security manager, be allowed to testify remotely via Zoom[1] videoconferencing. The State explained that Simonson had COVID-19 and was isolating. Osborn objected, noting "I think witnesses testifying should have to be physically present for a jury to see them." Rep. of Proc. (RP) at 40. The trial court granted the State's request to have Simonson testify remotely, explaining:

> So under the circumstances, I'm going to go ahead and allow Mr. Simonson to testify via Zoom. I know it would be better for—be better to have him here, but he's one of many witnesses. It sounds like he's not identifying anything. It sounds like the State has set it up to where he's going to be able to reference any report he wrote or any statement he wrote if he needs to.
>
> And again for the record, we're in the middle of COVID. It's—our numbers are coming down a little bit but Clallam County has particularly high numbers. I think it was 600-something per 100,000 as of Friday.
>
> . . . .
>
> And so that's pretty high. . . . So I think under the circumstances, I'm going to allow that witness to testify via Zoom.

RP 40-41.

Simonson appeared visually and audibly via Zoom and testified that he responded to the laundry facility after the break-in was reported. He took several photographs of the damage to

---

[1] Zoom is a cloud-based videoconferencing software platform.

2

the area where the coin machine had been located, which the trial court admitted as exhibits.

Simonson and the harbormaster testified that they provided surveillance video to the police. A

police officer identified the person in the video as Osborn.

The State produced evidence that the coin machine cost $2,025 to purchase in 2016, and

cost $2600.18 to replace with a new unit in 2022.

The jury found Osborn guilty as charged. The trial court ordered Osborn to pay the then-

mandatory victim penalty assessment of $500. The trial court found her indigent. Osborn

appeals.

ANALYSIS

I. RIGHT TO CONFRONT WITNESS

Osborn argues that the trial court violated her constitutional right to confront witnesses

by allowing Simonson to testify via videoconference. We disagree.

The federal constitution guarantees a person accused of a crime the right "to be

confronted with the witnesses against" them. U.S. CONST. amend. VI. The Washington

Constitution similarly provides that an "accused shall have the right . . . to meet the witnesses

against him face to face." WASH. CONST. art. I, § 22.6. The right is a procedural guarantee of

"face-to-face" cross-examination. *Coy v. Iowa*, 487 U.S. 1012, 1019, 108 S. Ct. 2798, 101 L. Ed.

2d 857 (1988) (confrontation right violated by a screen placed between testifying teenaged

sexual assault victims and the defendant).

But the preference for face-to-face confrontation "must occasionally give way to

considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S.

836, 847-49, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (internal citations omitted), quoted in

*State v. Milko*, 21 Wn. App. 2d 279, 289-90, 505 P.3d 1251, *review denied*, 199 Wn.2d 1024, 512 P.3d 890 (2022). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850. The *Craig* two-prong test of necessity and reliability applies to two-way video testimony such as Zoom. *Milko*, 21 Wn. App. 2d at 289-90.

We review alleged violations of the confrontation clause de novo. *Id*. at 289. Because necessity is a mixed question of law and fact we review the trial court's factual findings related to necessity for substantial evidence, and we review de novo the trial court's legal conclusion that remote testimony was necessary. *Id*. at 289-90. Violations of a defendant's right to confrontation are subject to constitutional harmless error analysis. *Coy*, 487 U.S. at 1021.

Here, Osborn does not dispute the important public policy at issue—a global pandemic and the need for an infected witness to isolate from the public. Rather, she challenges the trial court's conclusion that remote testimony was necessary. Necessity is case-specific and "means something more than 'convenient,' although something less than 'absolute physical necessity.'" *State v. Sweidan*, 13 Wn. App. 2d 53, 73, 461 P.3d 378 (2020).

The trial court relied on its awareness of the current COVID-19 transmission rate, which it noted was particularly high at the time of trial, and the reality that bringing an infected witness into the courtroom would recklessly endanger the jury and courtroom staff, including Osborn and her attorney. This evidence was sufficient to support the trial court's finding that remote testimony was necessary.

4

Osborn bemoans the lack of sworn declarations establishing the need for remote testimony. She points out that nothing in the record established how severe Simonson's illness was or the estimated length it would take him to recover. Notably, Osborn did not ask for a continuance until Simonson could testify in person. While we agree that it would be best practice for trial courts to require affidavits or testimony under oath before ruling on the necessity of allowing remote testimony to further an important public policy, Osborn offers no authority requiring such evidence under these circumstances. *See Sweidan*, 13 Wn. App. 2d at 78. Additionally, we appreciate that many details of Simonson's illness Osborn now suggests were necessary to know in order for the superior court to assess necessity were likely difficult to discern given the ever-evolving nature of the COVID-19 pandemic. We find that on this record the trial court's finding was supported by substantial evidence.

The reliability prong of the *Craig* test is satisfied, and Osborn does not argue otherwise. "Assuming the trial court allows videoconference testimony, this court assesses whether other components of the confrontation clause were left intact, including 'oath, cross-examination, and observation of demeanor by the trier of fact' to determine if testimony is reliable. *Id*. at 74 (quoting *Maryland v. Craig*, 497 U.S. at 837, 110 S. Ct. 3157 (1990). "These components ensure the reliability of testimony in the absence of physical presence." *Sweiden*, 13 Wn. App. 2d at 74. Here, Simonson testified under oath, Osborn cross-examined him, and the record reflects that the jury could observe Simonson's demeanor via the video conferencing. Therefore, we hold that the reliability of the testimony was ensured.

Thus, Simonson's remote testimony satisfied the two prongs of the *Craig* test in that it was necessary to further the important public policy of protecting the health and safety of the

community and the procedure used assured the testimony was reliable. Moreover, any error by the trial court was harmless beyond a reasonable doubt. Simonson's testimony did not include identification of Osborn and was generally limited to authentication of photos he took at the crime scene. The other evidence provided by the State was strong enough that we hold beyond a reasonable doubt that the jury would have come to the same verdicts absent Simonson's testimony. *State v. Lui*, 179 Wn.2d 457, 495, 315 P.3d 493 (2014).

Accordingly, we hold that allowing Simonson to testify remotely did not violate Osborn's right to confrontation.

## II.  INSUFFICIENT EVIDENCE

Osborn also argues that the State produced insufficient evidence to support her conviction for second degree theft. The State concedes, and we agree.

The State must prove, beyond a reasonable doubt, every element of a crime. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When reviewing challenges to the sufficiency of the evidence to sustain a conviction, we ask "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *Id*. at 105. We review de novo a challenge to the sufficiency of the evidence. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

Under RCW 9A.56.040(1)(a) a person is guilty of second degree theft if that person commits theft of property, other than a firearm or motor vehicle, that exceeds $750 in value but does not exceed $5,000 in value. The value of the property is the market value of the property in the approximate area of the theft and at the time of the theft. RCW 9A.56.010(21)(a). "Market value is the price a well-informed buyer would pay to a well-informed seller, when neither is

obliged to enter the transaction." *State v. Jussila*, 197 Wn. App. 908, 934, 392 P.3d 1108 (2017). Evidence of the price paid for the property is entitled to great weight, but the purchase "must not be too remote in time." *Id*.

In *State v. Ehrhardt*, we reversed a conviction for second degree theft where the evidence of the market value of the stolen goods was limited to their cost three years prior and did not account for the current condition of the goods or what effect that condition had on their value. 167 Wn. App. 934, 947, 276 P.3d 332 (2012). Similarly here, the State produced evidence of what the coin machine cost five years prior and what it would have cost to replace at the time of trial. The State did not produce any evidence of the coin machine's condition or how it may have depreciated in value. On this record, we hold that the State presented insufficient evidence from which the jury could infer current market value. Accordingly, we accept the State's concession that insufficient evidence supported Osborn's second degree theft conviction.[2]

### III. VICTIM PENALTY ASSESSMENT

In a supplemental brief, Osborn also argues that RCW 7.68.035 as recently amended in Engrossed Substitute House Bill 1169 applies to her appeal such that the victim penalty assessment must be stricken from her judgment and sentence. The State agrees Osborn is indigent and the trial court must strike the victim penalty assessment on remand. ESHB 1169 added a subsection to RCW 7.68.035 that prohibits courts from imposing the victim penalty assessment on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Although the amendment did not take effect until after Osborn's sentencing,

---

[2] Because we remand for the trial court to vacate the second degree theft conviction, we need not address Osborn's argument that she received ineffective assistance of counsel when counsel failed to object to evidence of the replacement value for the coin machine.

No. 57061-1-II

it applies to her case because this matter is on direct appeal. *State v. Ellis*, __ Wn. App. 2d __, 530 P.3d 1048, 1057 (2023). Because the trial court found Osborn indigent, the court must strike the victim penalty assessment at resentencing.

CONCLUSION

We affirm Osborn's convictions for second degree burglary and second degree malicious mischief but remand to the trial court to vacate her conviction for second degree theft and for resentencing, including striking the $500 victim penalty assessment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C.J.

Veljacic, J.